IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SEAN P. MCCAFFREY, et al., )<br>On behalf of themselves and all others )<br>similarly situated, )<br> )<br>            Plaintiffs, )<br> )<br>v. )<br> )<br>MORTGAGE SOURCES, CORP., )<br> )<br>            Defendant. ) | Case No.: 2:08-cv-02660-KHV-DJW |

**MEMORANDUM IN SUPPORT OF THE PARTIES' JOINT MOTION FOR
APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT
AND DISMISSAL WITH PREJUDICE**

Plaintiff Norm Peterson ("Plaintiff") on behalf of himself and others similarly situated, and Defendant Mortgage Sources Corp. ("MSC" or "Defendant") (collectively the "Parties"), by and through each Parties' respective counsel of record, hereby submit their Memorandum in Support of the *Joint Motion for Approval of FLSA Collective Action Settlement and Dismissal with Prejudice.*

The Parties request that this Court enter an Order approving the Settlement Agreement. The Parties will submit to chambers a proposed Order approving the Settlement Agreement and dismissing the action with prejudice.

### I.        INTRODUCTION

On December 24, 2008, Plaintiffs commenced this litigation by filing a Complaint in the United States District Court for the District of Kansas at Case No. 2:08-cv-02660-KHV-DJW ("the Litigation"). In his Complaint, Plaintiff asserted violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") against MSC on behalf of himself and other individuals

who had been employed by MSC as Loan Officers within the prior three years.  Plaintiff alleged that MSC failed to pay Loan Originators overtime compensation as required by the FLSA.

On March 12, 2009, Defendant timely filed its Answer to Plaintiff's Complaint, disputing the material allegations both as to fact and law and denying any liability to Plaintiff or to other current or former MSC Loan Officer.

On February 20, 2009, Plaintiff filed a Motion to Conditionally Certify the Class.  On August 27, 2009, the Court granted Plaintiff's Motion and approved the Notice to the Putative Class.  On January 15, 2010, after receiving a new form of the previously approved notice, the Court granted approved an amended Notice and ordered that it be distributed to the putative class.  Plaintiffs' counsel sent the notice to the putative class members.

In response to the Notice, six individuals opted into this lawsuit.  After conducting lengthy discovery and Defendant providing thousands of pages of payroll data, the Parties engaged in mediation before Lawrence Rute on June 18, 2010.  Mediation was unsuccessful, however, the parties continued to engage in lengthy settlement negotiations.  The parties were able to reach a resolution of this class matter through these negotiations.

Plaintiff believes that the claims asserted in this Litigation have merit.  MSC denies the claims.  Both Parties wish to avoid the uncertainty and risk attendant with litigation, as well as the expense and length of continued proceedings necessary to prosecute and defend the Litigation, especially in a complex case like this action.

The settlement presented before this Court was the product of arms-length negotiations and experienced counsel.  The settlement is fair and reasonable and should be approved by this Court.  It provides substantial relief to the eligible employees, and it eliminates the risks both

sides would bear if this litigation continued to resolution on the merits.  A copy of the Settlement Agreement is attached as **Exhibit A**.

## II.     LEGAL ANALYSIS

**A.     Approval of the Terms of the Settlement Agreement:**

Proposed settlements under the FLSA require court approval because private settlements under the FLSA will not effectuate a valid release.  *Stalnaker v. Novar Corp.*, 293 F.Supp.2d 1260, 1262 (M.D.Ala. 2003) (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945)).  In this case, it bears reiterating that "class" actions brought under the FLSA are not true class actions as that term is contemplated by the Federal Rules of Civil Procedure.  29 U.S.C. §216(b).  A section 216(b) representative action is not a true class action in the sense that, in order to bind anyone to the result obtained, that individual must affirmatively consent to be bound by the terms of the settlement.  *See, Brown v. Money Tree Mortgage, Inc.*, 222 F.R.D. 676, 678 (D.Kan. 2004); *Clougherty v. James Vernor Co.*, 187 F.2d 288 (6th Cir. 1951).  The significance is that the due process concerns which mandate a high level of judicial scrutiny of class action litigation under Rule 23 are not present in FLSA actions because potential class members who do not opt in are not bound by the case's outcome.  *Maguire v. Trans World Airlines, Inc.*, 55 F.R.D. 48 (S.D.N.Y. 1972); *Wagner v. Lowe's Theatres, Inc.*, 76 F.R.D. 23 (M.D.N.C. 1977).

Public policy favors settlements.  This is particularly true in complex cases, such as this, where substantial resources can be conserved by avoiding the time, cost and rigor of protracted litigation.  *See, Lynn's Food Services, Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1149 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor.").

**B.	The Settlement is Fair, Just, and Reasonable:**

In determining whether to approve a settlement as being fair, just and reasonable, the Court must consider whether the proposed settlement was fairly and honestly negotiated; whether serious questions of law and fact exist which place the ultimate outcome of the Litigation in doubt; whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and the judgment of the Parties that the settlement is fair and reasonable.  *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984).   In evaluating settlement agreements, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel.  *In re BankAmerica Corp. Securities Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002).

In the instant case, it is clear that the proposed settlement is fair, just and reasonable. First, the settlement was reached after months of informal discovery, a formal mediation lasting more than six hours, and approximately ten weeks of arms-length negotiation.  A large amount of significant data was reviewed and analyzed by the Defendant and Plaintiff in order to assure an effective negotiation process.  The Plaintiff aggressively pursued his claims. The matter was certainly contested, leading to counsel for both parties ardently negotiating their positions.  In the end, experienced counsel on both sides of this matter deemed the settlement fair and reasonable. "Although the Court is not bound by the counsel's opinion, their opinion is nonetheless entitled to great weight." *In re BankAmerica*, 210 F.R.D. 702.

Second, as with any FLSA class action, questions of fact and law exist which place the ultimate outcome of the litigation in doubt.  In this particular case, questions exist as to whether

the Plaintiff was entitled to a three year statute of limitations or to liquidated damages. This was based on the fact that the Defendant had raised a good faith defense based on exemptions it relied on and other courts and the Department of Labor's application of those exemptions to employees similar to Plaintiff. Moreover, Defendant raised the good faith defense that the named Plaintiff was an independent contractor for most of his relationship with MSC and, thus, was not entitled to overtime. Defendant also raised the defense that the opt-in plaintiffs, even if entitled to overtime, did not work over forty hours in any week while employed by MSC.

Third, the Parties agree that the settlement is fair and reasonable. The Maximum Gross Settlement Amount, after deduction of the requested amount for fees and expenses, is sufficient to provide adequate compensation to the 7 class members in light of the claims asserted in the litigation. Given the financial terms of the settlement, it is highly unlikely that the recovery for any settlement class member would increase as a result of protracted litigation. Indeed, claims like this are the most appropriate ones to be resolved in a class fashion because litigation of individual claims for such amounts would not be economically feasible. The substantial benefit that will be received by the qualified class members will be made certain by the settlement. This is a significant factor weighing in favor of the Court's approval of the settlement. *See In re BankAmerica*, 210 F.R.D. at 701 ("As courts have recognized, when considering settlement agreements they should consider the vagaries of litigation and compare the significance of immediate recovery by the way of compromise to the mere probability of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in the hand instead of the prospective flock in the bush.").

Finally, and most importantly, no class member is bound by the settlement unless he or she decides to opt into the settlement. For members opting-in, in exchange for the compensation

received, they will only be releasing their federal and state wage and hour claims against Defendant. Payment does not require a general release of all claims. If a class member believes that he or she is entitled to a larger recovery than the one described in the Settlement Agreement (and described in the notice), that individual can merely decide not to consent to the terms of the settlement and preserve their claim. Choosing not to opt in will in no way lead to any release of claims for this member. In summation, this settlement will only be binding on persons who deem the terms acceptable and consents to join.

**C.     Request for Attorneys' Fees, Expenses and Service Payments are Reasonable:**

Under the FLSA, plaintiffs are entitled to reasonable attorneys' fees spent in recovering unpaid wages. *See* 29 U.S.C. § 216(b). Moreover, the Parties' Settlement Stipulation provides that Plaintiff's Counsel will receive approximately thirty-three percent (33%) of the entire Settlement Fund for costs fees incurred in this action and future costs and fees associated with securing Court approval of the Settlement, fielding calls from putative plaintiffs concerning their rights and how to properly opt-in or opt-out of the Settlement.

Pursuant to the terms of the Settlement and the Parties' agreement, and through this Motion and Memorandum, Plaintiffs' Counsel is respectfully requesting an award in this amount and as per these terms and Defendant does not oppose this request. Plaintiff also respectfully suggests that the percentage of the common fund method is the favored method and should be applied in this case and that the percentage requested is reasonable and well within the fee range approved by this Court and other courts in similar litigation and should be approved herein.

In the Tenth Circuit, the ***preferred method for awarding attorneys' fees*** in common fund cases, such as this, is to ***award a percentage of the fund***. *See Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995); *Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994); *Ramah*

*Navaho Chapter v. Babbitt*, 50 F. Supp. 2d 1091, 1096-1097 (D.N.M. 1998); *In re Sprint Corporation ERISA Litig.*, 443 F. Supp. 2d 149, 1269 (D. Kan. 2006); *see also* Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 255-56 (1985).  The common fund doctrine "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense." *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 455 (10th Cir. 1988) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)).  Thus, the percentage award results "in a sharing of the fees among those benefited by the litigation." *Brown*, 838 F.2d at 454.

Courts have rejected the notion that attorneys' fees in these types of cases should be based upon hours worked by the attorneys.  The percentage of the fund method is preferred because, among other things, it rewards prompt and efficient resolution of class litigation, while strict application of the alternative "lodestar" methodology based upon hours worked encourages inefficiency and resistance to prompt settlement. *See Swedish Hospital Corp. v. Shalala*, 1 F.3d 1261, 1268 (D.C. Cir. 1993). "[A] percentage of the fund approach more accurately reflects the economics of litigation practice . . . and most closely approximates the manner in which attorneys are compensated in the marketplace for these types of cases." *Id*. at 1269 (citations omitted).

In applying the percentage of the fund methodology, courts in the Tenth Circuit commonly review the twelve factors articulated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).  The *Johnson* factors are:  (1) the time and labor required, (2) the novelty and difficulty of the questions presented by the case, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorneys due to the acceptance of the case, (5) the customary fee, (6) whether the fee is

7

fixed or contingent, (7) any time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

Application of the twelve *Johnson* factors, however, is not rigid and is not presented in any particular order.[1]  The Tenth Circuit has cautioned that while the *Johnson* factors are relevant, they were developed in the statutory fee context and "the inherent differences between statutory fee and common fund cases could justify a trial judge's decision to assign different relative weights to those factors in the two types of cases."  *See Brown*, 838 F.2d at 455.  A review of the applicable *Johnson* factors clearly supports Plaintiff's fee request in this case.

### A.    *The Amount Involved and the Results Obtained (Factor 8)*

The Settlement Fund amounts will be made almost immediately available to be distributed to the seven qualified claimants that choose to participate in the Settlement pursuant to the terms of the Joint Stipulation of Settlement and Release.  In light of the legal and factual complexities of this case and the potential risks to each Party in the event that this Litigation continued, which are set forth in detail herein, there is no doubt that this is a favorable Settlement.  These amounts are available to class members without the uncertainty of trial and are being disbursed through this Settlement in the near future rather than at some unknown time and after years of protracted and costly litigation.  Furthermore, because of the legal questions

---

[1]    By way of example, Factor 7 (time limitations imposed) and Factor 11 (nature and length of client relationship) are not applicable in this case.  Courts recognize that not all twelve factors will apply in every case, and this fact does not affect the appropriateness of awarding a percentage of the fund.  *See In re Sprint Corporation ERISA Litig.*, 443 F. Supp. 2d at 1270 (noting the inapplicability of three of the *Johnson* factors).

involved and the risks and weaknesses inherent in Plaintiff's claims, the amount attributed to each Plaintiff is significant and will benefit them.

Again, this is a favorable Settlement for the putative plaintiffs  The fact that these substantial amounts are available to class members without the uncertainty of trial and future economic status of Defendant, and are being delivered through this expeditious Settlement rather than after years of additional litigation, coupled with the fact that because of the weaknesses of Plaintiff's claims as a result of the issues in this case, qualifies the results of this Settlement as beneficial under any reasonable assessment.

### B.     *Time and Labor Required and the Preclusion of Other Matters (Factors 1 and 4)*

This matter was vigorously contested by seasoned wage and hour law counsel, as evidenced by the need to conduct a six hour mediation and nearly 10 weeks of additional negotiations, and the need to analyze the significant documentation produced by Defendant, all of which contributed to the substantial time and labor required to pursue this resolution.  Brady & Associates is a small law firm. The Defendant is a small, yet successful, company who employed one of the larger law firms in the Kansas City area.  Plaintiff's Counsel took significant risks when deciding to pursue this action given the potential outcome if the case were litigated to its end.  Plaintiff's Counsel takes all cases under the assumption that lengthy litigation will result.

The time requirements on Plaintiffs' Counsel, given their limited resources, required them in essence to delegate a significant portion of their practices in the pursuit of one case over the period of time from which it was filed and certainly limited their ability to take additional cases during this period.  Yet, this was a risk Counsel was willing to take when pursuing this

matter. For these reasons, Plaintiff's Counsel rejected the acceptance of other cases during this time frame due to the existing and expected demands of this Litigation.

### C. *Novelty and Difficulty of Theories and Skill Required (Factors 2 and 3)*

This case was novel and difficult. "The FLSA is very complex." *Aaron v. City of Wichita*, 1993 U.S. Dist. LEXIS 4791 (D. Kan. Mar. 9, 1993). "FLSA claims typically involve complex mixed questions of fact and law -- e. g., what constitutes the "regular rate," the "workweek," or "principal" rather than "preliminary or postliminary" activities. These statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings." *Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728, 743 (U.S. 1981), quoted by *Roe-Midgett v. CC Servs.*, 2006 U.S. Dist. LEXIS 22374 (S.D. Ill. Mar. 29, 2006); *Goldman v. RadioShack Corp.*, 2006 U.S. Dist. LEXIS 2433 (E.D. Pa. Jan. 23, 2006). The mere complicated nature of FLSA cases in general, coupled with the fact that this case involved questions as to whether the class members were employees of Defendant and whether and to what extent overtime hours were actually worked, substantially added to the complexity, time exerted and risks involved in pursuing this case. The level of skill required to frame, analyze, investigate, research, summarize and brief the issues in this Litigation was substantial, and called for attorneys well-seasoned in the specialty of wage and hour law.

As stated throughout this Memorandum, serious questions of law and fact existed in this case which placed the ultimate outcome of the litigation in doubt. Each Party had weaknesses in their case. Plaintiff struggled with the fact that he was categorized as an independent contractor and not an employee, he did not have documentation setting forth the exact amount, if any, of overtime hours that the putative plaintiffs were suffered, required or permitted to work and the hurdle of establishing what hours actually constitute compensable time under the FLSA.

The Defendant struggled with the fact that its classification of the Loan Officers as independent contractors was not justified based on some of the factors under the economic realities test, that it made numerous deductions from the Installers' compensation and that it did not keep records of the hours worked by its Installers.

More specifically however, is the fact that this case involved "off the clock" claims under the FLSA. "Off-the-clock" litigation, such as the instant matter, is considered difficult and risky. "Off-the-clock" cases create problems as to plaintiffs' ability to obtain final approval of a collective class pursuant to FLSA Section 216(b) in light of some arguable dissimilarity among putative class members inherent in off-the-clock claims. Further, questions exist as to plaintiffs' ability to prove that the plaintiff, or any of the putative collective class members, worked off-the-clock on a regular basis. Additionally, even if the plaintiffs were able to prove that some or all putative collective class members engaged in off-the-clock work, issues would still exist regarding how much off-the-clock work they performed. They are equally difficult for defendants as well, in that they have no actual proof of hours worked.

Proof of Plaintiff's claims in this could have been accomplished, if at all, only through extensive and costly discovery for all Parties, including hiring an expert to review and analyze thousands of pages of payroll and other employment related records, deposing the owner and several managers, and defending the depositions of members of the putative collective class. *See In re BankAmerica*, 210 F.R.D. at 701 ("As courts have recognized, when considering settlement agreements they should consider the vagaries of litigation and compare the significance of immediate recovery by the way of compromise to the mere probability of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in the hand instead of the prospective flock in the bush."). In the alternative, Defendant had

issues because it misclassified its employees and failed to maintain legally required documentation regarding its employees' work hours and it would also need an expert. Due to the hurdles faced by each Party, the outcome of the Litigation was inarguably uncertain and their varying legal positions difficult.

Furthermore, as previously stated herein, among a litany of defenses, the Defendant asserted that the Loan Officers were not employees under the FLSA and KWPA, but rather were independent contractors not entitled to overtime or the protections of the KWPA. Such an argument requires an intense factual analysis and if this case were to go to trial, a significant amount of complex and detailed testimony regarding the Loan Officers' duties, their interaction with the Defendant and the number of hours worked would be required to provide a fact finder with sufficient information to make an educated finding of the facts. As mentioned, if the Plaintiff was incorrect and the Loan Officers were found to be independent contractors, the Plaintiff and the putative class members would have absolutely no claim to overtime or back wages under the FLSA. Therefore, both Parties faced significant risk regarding the Litigation of this matter. Either result at the end of the trial litigation would have lead to certain appeals.

### D. *The Customary Fee and Whether the Fee is Fixed or Contingent (Factors 5 and 6):*

The customary fee in these types of cases wage and hour law cases is a fee contingent upon a successful outcome. *See, Ramah Navajo Chapter*, 50 F.Supp.2d at 1104. In prosecuting its wage and hour law matters, Brady & Associates follows the customary path and always enter into contingent fee agreements with their wage and hour law plaintiffs providing for a percentage of the recovery (usually between 33%-40%). This is heavily based on the fact that most of the individuals represented in these cases are unable to pay for attorney fees, expenses, and/or costs. In turn, both firms front all out of pocket expenses incurred in the litigation. If unsuccessful, the

firm is not paid any fees or reimbursed for their expenses, which many times can be significant. Therefore, the risk taken is enormous in that, if unsuccessful in the litigation, the firm would not only have lost all its out-of-pocket expenses, but would not have been compensated for years of work and overhead expenses.  This arrangement is also risky and can be and has been a disadvantageous agreement where the plaintiff is unable to proceed forward as a class or after expending fees for an expert to support damages at the beginning of the Litigation, the case proves to be weak and the amount of out of pocket expenses and/or overhead costs involved outweigh what is actually recovered under the contingent fee arrangement.  Last, Plaintiff agreed to the contingent fee in the amount of 40% of the funds, if any, obtained by settlement and Counsel is requesting 33%.

### E.     *Awards in Similar Cases (Factor 12)*

Based on historical awards of attorneys' fees in similar cases, the percentage of the fund requested–somewhat less than forty percent (40%) – is presumptively reasonable.  Brady & Associates has had combined figures for fees and administration costs in an FLSA collective action matter in this District approved at 33% and greater. *Hammond, et. al. v. Lowe's Home Centers,* Case No. 2:02-cv-2509 (D. Kan., Sept. 29, 2006) (Murguia, J., sealed order approving fees and administrative expenses of 42.42% of the recovery); *See also Most, et. al. v. GNC Nutrition Corp*, Case No. 2:06-cv-2330 (D. Kan., July 23, 2007) (Murguia, J., sealed order approving 35.3% fees, with Defendant to bear administration); *Canterbury, et. al. v. Parsons Construction*, Case No. 2:06-cv-4281 (W.D. Mo., July 3, 2007) (Wright, J., sealed order approving 37% fees, with Defendant to bear administration).  In other FLSA collective action settlements (including several in this District), other wage and hour law counsel has had attorneys' fees approved at rates of 33% and 34% of the settlement fund.  *Barnwell, et al. v. Corrections Corporation of America*, case no. 08-2151-JWL (D. Kan. February 12, 2009) (Order

under seal approving attorneys' fees and costs at 33%, but not including costs of settlement administration); *Hamilton, et al. v. ATX Services Inc.*, Case no: 08-0030-SOW (W.D.Mo. May 6, 2008) (Order under seal approving attorneys' fees and expenses at 34%), *Smith, et al. v. Mill-Tel, Inc.*, Case no. 08-2016-JAR (D.Kan. August 27, 2008) (order under seal approving attorneys' fees and expenses at 33%), *Morak, et al. v. CitiMortgage, Inc.*, Case no.: 07-1535 (E.D.Mo. September 26, 2008) (order under seal approving attorneys' fees and expenses at 33%, but not including costs of settlement administration), *Staton v. Cavo Communications, Inc.*, Case no.: 08-0273 (E.D.Mo. January 14, 2009) (order under seal approving attorneys' fees and expenses at 33%, but not including costs of settlement administration).

Moreover, other courts have approved attorneys' fee awards to class counsel amounting to forty percent of a settlement fund in FLSA. *See Mansfield v. Castaways Backwater Cafe, Inc.*, 2008 U.S. Dist. LEXIS 63222 (M.D. Fla. Aug. 4, 2008) (awarding class counsel attorneys' fees of 40% of settlement fund plus expenses); *Hernandez v. Hill Country Tel. Cooperative, Inc.*, 849 F.2d 139, 144 (5th Cir. Tex. 1988) (approving a contingency fee of 50 % in a Title VII matter); *McGill v. Ottawa*, 773 F. Supp. 1473 (D. Kan. 1991) (awarding class counsel attorneys' fees of 40% of the settlement fund); *West, et al. v. First Franklin Financial Corp.*  Federal courts in this District and nationwide are in agreement that attorneys' fees in the range of 30-40% of the settlement fund in FLSA cases are reasonable.  *See Perry v. National City Bank*, Order Approving Settlement, Attorneys' Fees and Service Awards, Case No. 3:05-CV-00891-DRH-PMF (S.D. Ill. March 3, 2008) (approving requests for attorneys' fees and costs in the amount of thirty-three percent (33%) of the Settlement Fund);  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) (approving fee award of  38.26% of total settlement fund in FLSA collective action and Rule 23 class action case).

The amount sought here is consistent with Counsel's prior experiences. In this matter, the 33% is actually at the lower end of the range of average percentages awarded in these types of cases. The majority of percentage fee awards in these type of cases reflect counsel receiving between 33-37%. Therefore, Plaintiff respectfully states that 33% of the Settlement Fund is for fees and costs is reasonable and should be awarded in this case.

**D.      The Request for Service Fee is Reasonable:**

Under section III.A.i.b. of the Settlement Agreement, the Name Plaintiff is seeking Court approval for a service fee to be paid to him in addition to his normal settlement distribution. Mr. Peterson expended time and effort and worked with Plaintiff's Counsel throughout this Litigation in pursuing these claims on behalf of class members even though it required him to travel from Wichita and required him to take time and effort away from him current employment relationship. Mr. Peterson also took and is taking the risk of affecting his future employment opportunities, which frequently may cause named plaintiffs to loosed future employment opportunities as a result of suing a prior employer, and subjected himself to the personal tolls of being directly involved in the action, to fight for his rights and others rights and should be awarded additional compensation for his efforts. Moreover, Mr. Peterson took the invaluable initiative to file this matter on behalf of the class of employees. Therefore, the amount sought for Mr. Peterson's incentive payment set forth in the Settlement is fair and reasonable and should be approved by this Court.

**WHEREFORE**, the Parties hereby request that this Court grant this Motion and enter the proposed Order Determining Good Faith and Granting Approval of Settlement.

Respectfully submitted,

| | |
|---|---|
| BRADY & ASSOCIATES | POLSINELLI SHUGHART PC |
| By: ___/s/ Michael Hodgson_____ | By: __/s/ Robert J. Hingula_____ |
| MICHAEL F. BRADY (#18630) | ANTHONY J. ROMANO  (#13486) |
| MICHAEL HODGSON (#21331) | ROBERT J. HINGULA  (#22203) |
| 10901 Lowell Avenue, Suite 280 | 120 W. 12th Street |
| Overland Park, KS  66210 | Kansas City, Missouri  64105 |
| (913) 696-0925 | (816) 421-3355 |
| Fax:  (913) 696-0468 | Fax No. (816) 374-0509 |
| brady@bradylaw.com | aromano@polsinelli.com |
| mhodgson@bradylaw.com | rhingula@polsinelli.com |
| | |
| ATTORNEYS FOR PLAINTIFF | ATTORNEYS FOR DEFENDANT MORTGAGE SOURCES CORP. |

**CERTIFICATE OF SERVICE**

I hereby certify that on October 19, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

Michael F. Brady, Esq.
Mike Hodgson, Esq.
Brady & Associates
10901 Lowell Avenue, Suite 280
Overland Park, KS  66210
Fax:  913-696-0468
brady@bradylaw.com
ATTORNEYS FOR PLAINTIFFS

                    /s/ Robert J. Hingula

057438.131569.1889492.1