# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SEAN P. MCCAFFREY, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | CIVIL ACTION |
| v. ) | No. 08-2660-KHV |
| ) | |
| MORTGAGE SOURCES, CORP., ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## MEMORANDUM AND ORDER

Norman Peterson brings suit against Mortgage Sources, Corp. ("MSC") on behalf of himself and others similarly situated, seeking unpaid straight time, overtime premiums and related penalties and damages under the Fair Labor Standards Act ("FLSA" or "Act"), 29 U.S.C. §§ 201 et seq. This matter is before the Court on the parties' Joint Motion For Approval Of FLSA Collective Action Settlement And Dismissal With Prejudice (Doc. #66) filed October 19, 2010.

**I. Factual Background**

On December 24, 2008, Norman Peterson, Lisa Kagy and Sean McCaffrey filed putative collective action claims against defendant for alleged violation of the FLSA. See Doc. #1.[1] Their complaint alleged that in violation of the FLSA, defendant willfully failed to pay straight time and overtime compensation. See id. ¶ 1.[2]

On August 27, 2009, pursuant to 29 U.S.C. § 216(b), for purposes of providing notice of the

---

[1] Alternatively, plaintiffs asserted putative class action claims under the Kansas Minimum Wage Maximum Hours Law, K.S.A. §§ 1202 et seq., and the Kansas Wage Payment Act, K.S.A. §§ 44-313 et seq. See Doc. #1.

[2] On February 26, 2009, the Court granted Kagy's request to dismiss her claims without prejudice. See Doc. #11.

action to all putative class members, the Court conditionally certified a collective action of loan officers who did not receive all straight time or who worked more than 40 hours a week and did not receive overtime premiums for three years before the date of certification. See Doc. #37 at 1, 3. The Court designated Peterson and McCaffrey as class representatives. See id. at 8. On January 15, 2010, the Court sustained the parties' joint motion to broaden the distribution of opt-in notifications to include loan processors. See Doc. #46. The Court ordered plaintiffs to disseminate notice to potential class members by January 29, 2010. See id. In response to the notice to potential class members, six individuals opted to join the class. See Docs. #47-52.[3]

On September 20, 2010, Peterson entered into a settlement agreement with defendant. See Exhibit A to Doc. #67. The agreement does not bind the six individuals who opted into the conditionally certified class unless they affirmatively agree to be bound by the settlement. See id. ¶ III(A)(1)(e) and (F); see also Joint Motion (Doc. #66) at 5-6.

The terms of the proposed settlement are as follows: defendant will contribute $85,000 to a global settlement fund which includes attorney's fees and costs. See Exhibit A to Doc. #67 ¶ III(A)(1). The amount will be distributed as follows: (1) $28,050 in attorney's fees and expenses; (2) $1,082.30 to Peterson for acting as class representative and litigating the matter; (3) the remainder to class members on a pro rata basis proportionate to the alleged overtime hours worked and applicable overtime rate of each class member, with a minimum of $2,186.33 to each class member. See id. ¶ III(A)(1)(a)-(c). Based on defendant's books and records, the claims

---

[3] The six individuals are Gary Anderson, Janet D. Dooley, Lea Zich, James Julian, Elizabeth Watson-Kays and Robert Srejma. See Docs. #47-52.
On August 3, 2010, the Court granted plaintiffs' motion to dismiss McCaffrey's claims with prejudice. See Docs. #58, #59.

administrator and class counsel will determine for each class member a pro rata portion of the global settlement.[4]  See Exhibit A to Doc. #67 ¶ III(A)(1)(c).  To participate in the settlement, class members must release wage or salary compensation claims which arise from their employment with defendant.  See id. ¶ III(A)(1)(e).  Class members will have 30 days from the date of mailing of the notice of settlement to opt in.  See id.  Any funds remaining at the close of the claims period will revert to defendant.  See id.

## II.     Legal Standards

### A.     FLSA Collective Action Certification

The FLSA provides that an employee may bring a collective action on behalf of other employees who are "similarly situated."  29 U.S.C. § 216(b).[5]  The Tenth Circuit has approved a two-step approach to determining whether plaintiffs are "similarly situated" for purposes of FLSA Section 216(b).  Thiessen v. GE Capital Corp., 267 F.3d 1095, 1105 (10th Cir. 2001).[6]  Under this

---

[4] The agreement defines "claims administrator" as defendant and/or counsel for defendant, i.e. Polsinelli Schughart PC.  See Exhibit A to Doc. #67 ¶ I(A)(2).  "Class counsel" means attorneys for plaintiff, i.e. Brady & Associates.  See id. ¶ I(A)(3).

[5] In part, Section 216(b) states as follows:

An action to recover [for FLSA violations] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

[6] Thiessen involved a collective action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq.  Because the ADEA adopts the collective action mechanism set forth in FLSA Section 216(b), the Thiessen decision applies to FLSA collective actions.  See Kaiser v. At The Beach, Inc., No. 08-CV-586-TCK-FHM, 2010 WL 5114729, at *4
(continued...)

approach, a court typically makes an initial "notice stage" determination whether plaintiffs are "similarly situated." Id. at 1102. That is, the district court makes a conditional determination whether a collective action should be certified for purposes of sending notice of the action to potential class members. See Brown, 222 F.R.D. at 679. For conditional certification at the notice stage, the court requires "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." Thiessen, 267 F.3d at 1102 (quotations and citations omitted). The standard for certification at the notice stage is a lenient one that typically results in class certification. See Brown, 222 F.R.D. at 679.

At the conclusion of discovery (often prompted by a motion to decertify), the court makes a second collective action determination using a stricter standard of "similarly situated." Thiessen, 267 F.3d at 1102-03. During this second stage analysis, the court considers several factors including (1) the disparate factual and employment settings of individual plaintiffs; (2) various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations. See id. at 1103.[7] Where parties settle FLSA claims before the court has made a final collective action ruling, the court must make some final class certification finding before it can approve a collective action settlement. See Murillo v. Pac. Gas & Elec. Co., No. CIV. 2:08-1974 WBS GGH, 2010 WL 2889728, at *2 (E.D. Calif. July 21, 2010); Burkholder v. City of Fort Wayne, – F. Supp. 2d –, No. 1:08-CV-273, 2010 WL 4457310, at *2 (N.D. Ind. Nov. 1, 2010).

---

[6](...continued)
n.9 (N.D. Okla. Dec. 9, 2010); see also Brown v. Money Tree Mortg., Inc., 222 F.R.D. 676, 679 (D. Kan. 2004).

[7] Thiessen lists a fourth factor, i.e. whether plaintiffs made the filings required by the ADEA before instituting suit. See Thiessen, 267 F.3d at 1103. That factor does not apply in FLSA cases. See Kaiser, 2010 WL 5114729, at *3 n.6.

### B. FLSA Collective Action Settlement

When employees file suit against their employer to recover back wages under the FLSA, the parties must present any proposed settlement to the district court for review and a determination whether the settlement is fair and reasonable. See Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353 (11th Cir. 1982). To approve an FLSA settlement, the Court must find that the litigation involves a bona fide dispute and that the proposed settlement is fair and equitable to all parties concerned. See id. at 1354. The Court may enter a stipulated judgment only after scrutinizing the settlement for fairness. See Baker v. D.A.R.A. II, Inc., No. CV-06-2887-PHX-LOA, 2008 WL 4368913, at *2 (D. Ariz. Sept. 24, 2008). The FLSA also requires that a settlement agreement include an award of reasonable fees. See Lee v. The Timberland Co., No. C 07-2367-JF, 2008 WL 2492295, at *2 (N.D. Cal. June 19, 2008). Further, when a plaintiff has voluntarily assumed the fiduciary role of class representative, the Court must determine "whether the settling plaintiff has used the class action claim for unfair personal aggrandizement in the settlement, with prejudice to absent putative class members." Shelton v. Pargo, Inc., 582 F.2d 1298, 1314 (4th Cir. 1978).

## III. Analysis

The parties ask the Court to approve their proposed settlement of FLSA collective action claims. Congress enacted the FLSA to protect certain groups of the population from substandard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce. See Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 706 (1945). Due to unequal bargaining power between employers and employees, the Act provides for minimum

wages, maximum hours and liquidated damages.[8]  See id.  The United States Supreme Court has found that the legislative policies behind the FLSA prohibit employees from waiving their rights to the minimum statutory rates and liquidated damages under the FLSA.  See id. at 707.  Thus, the provisions of the FLSA are not subject to private negotiation or bargaining between employers and employees.  See Lynn's Food Stores, 679 F.2d at 1352 (citing Brooklyn Sav., 324 U.S. at 706-07); Dees v. Hydradry, Inc., 706 F. Supp. 2d 1227, 1234 (M.D. Fla. 2010); Collins v. Sanderson Farms, Inc., 568 F. Supp. 2d 714, 718 (E.D. La. 2008).[9]  Employees may settle or compromise FLSA back wage claims in one of two ways.  See Lynn's Food Stores, 679 F.2d at 1352.  First, under FLSA Section 216(c), the Secretary of Labor may supervise the payment of unpaid wages to employees.[10]

---

[8] In part, Section 216(b) states as follows:

Any employer who violates the [minimum wage and maximum hour provisions of the Act] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

29 U.S.C.A. § 216(b).  The Supreme Court has found that the liquidated damages provision is not penal in nature, but constitutes compensation for retention in pay which might result in damages too obscure and difficult to prove.  See Brooklyn Sav., 324 U.S. at 902 (citing Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 583-84 (1942)).

[9] To allow such waivers would nullify the effectiveness of the Act.  See Brooklyn Sav., 324 U.S. at 712.

[10] In part, Section 216(c) states as follows:

The Secretary is authorized to supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under section 206 or section 207 of this title, and the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have under subsection (b) of this section to such unpaid minimum wages or unpaid overtime compensation and an additional equal amount as liquidated damages.

(continued...)

See id. at 1353. Second, in the context of a private action to recover unpaid wages, a district court may enter a stipulated judgment after scrutinizing the settlement for fairness. See id. (citing D.A. Schulte, Inc. v. Gangi, 328 U.S. 108, 113 n.8 (1946)); Hohnke v. United States, 69 Fed. Cl. 170, 178-79 (Fed. Cl. 2005). Here, the parties seek court approval of a settlement obtained in the context of a private action to recover unpaid wages. If the settlement reflects a reasonable compromise over issues such as FLSA coverage or computation of back wages that are actually in dispute, the Court may approve the settlement to promote the policy of encouraging settlement of litigation. See Lynn's Food Stores, 679 F.2d at 1354.

### A. Final Collective Action Certification

The parties do not ask the Court to make a final collective action determination. As noted, in August of 2009, the Court conditionally certified a collective action for purposes of providing notice of the action to putative class members. See Doc. #37 at 1, 3. The Court has not made a final determination as to whether plaintiffs are "similarly situated" for purposes of final collective action certification. Thiessen, 267 F.3d at 1102-03. When parties settle FLSA claims before the Court has made a final certification ruling, the court must make some final class certification finding before it can approve a collective action settlement. See Murillo, 2010 WL 2889728, at *2; Burkholder, 2010 WL 4457310, at *2. Here, the parties provide no information regarding whether plaintiffs are "similarly situated" for purposes of final collective action certification. On this record, the Court cannot make a final determination as to whether the action should proceed as a collective action. Accordingly, it cannot approve the proposed collective action settlement. See id.

---

[10](...continued)
29 U.S.C. § 216(c).

**B.    Proposed Settlement**

Even if the Court finally determined that the case should proceed as a collective action, the parties do not provide information sufficient for the Court to approve the proposed settlement. To approve an FLSA settlement, the Court must find that the litigation involves a bona fide dispute and that the proposed settlement is fair and equitable to all parties concerned. See Lynn's Food Stores, 679 F.2d at 1354.

**1.    Bona Fide Dispute**

The parties do not assert that a bona fide dispute exists or present evidence in support thereof. See Doc. #67. The parties requesting review of an FLSA compromise must provide information sufficient for the Court to determine whether a bona fide dispute exists. See Dees, 706 F. Supp. 2d at 1241. To meet this obligation, the parties should provide the following information: (1) a description of the nature of the dispute (for example, a disagreement over coverage, exemption or computation of hours worked or rate of pay); (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage. Here, the parties provide no such information.[11] On this record, the Court cannot determine whether the proposed settlement resolves a bona fide dispute of coverage under the FLSA. See, e.g., Collins, 568 F. Supp. 2d at 719-20 (mere existence of

---

[11]    The parties state generally that the proposed settlement is the result of protracted litigation and arms-length negotiations. See Doc. #67 at 4-5. The parties also state generally that defendant raised certain defenses, but they provide no facts or information to demonstrate the potential strengths or weaknesses of those defenses. See Joint Motion (Doc. #67) at 5.

adversarial lawsuit not enough to satisfy bona fide dispute requirement).

### 2. **Fair And Reasonable**

The parties also do not provide information sufficient for the Court to determine that the proposed settlement is fair and reasonable. As noted, the proposed settlement provides for a global payment of $85,000 to be distributed as follows: (1) $28,050 in attorney's fees and expenses; (2) $1,082.30 to Peterson; and (3) the remainder to class members on a pro rata basis proportionate to the alleged overtime hours worked and applicable overtime rate of each class member, with a minimum of $2,186.33 to each class member. See Exhibit A to Doc. #67 ¶ III(A)(1)(a)-(c). Based on defendant's books and records, the claims administrator and class counsel will determine for each class member a pro rata portion of the global settlement. See Exhibit A to Doc. #67 ¶ III(A)(1)(c). To participate in the settlement, class members must release wage or salary compensation claims which arise from their employment with defendant. See id. ¶ III(A)(1)(e). Class members will have 30 days from the date of mailing of the notice of settlement to opt in. See id. ¶ III(A)(1)(e). Any funds remaining at the close of the claims period will revert to defendant. See id.

As an initial matter, the Court cannot determine whether the proposed pro rata distribution is fair and reasonable. The proposed settlement provides for $55,867.70 to be divided pro rata among class members – with a minimum of $2,186.33 to each class member – based on the alleged overtime hours worked and applicable overtime rate of each class member, as determined by the claims administrator and class counsel based on defendant's books and records.[12] See id. ¶ III(A)(1)(a)-(c). The record reveals no information regarding how the minimum payment of

---

[12] Taking the proposed $85,000 global settlement payment and subtracting $28,050 in proposed attorney's fees and expenses and $1,082.30 as a proposed incentive fee to Peterson, $55,867.70 would remain to distribute to class members.

-9-

$2,186.33 was determined, or whether the number overtime hours which plaintiffs allege they worked is consistent with what is reflected in defendant's books and records. The record also provides no information regarding what recourse, if any, a class member would have if he or she disagrees with the pro rata determination. In addition, the record does not disclose the circumstances under which funds could remain at the close of the claims period and revert to defendant.[13] Even more troubling, it appears that a class member's pro rata distribution could increase or decrease based on the number of class members who opt in the settlement. If the settlement is indeed structured in this way, it "raises serious questions as to the adequacy of representation [because] the interests of the named plaintiffs lie in keeping the other class members uninformed." Van Gemert v. Boeing Co., 553 F.2d 812, 816 (2d Cir. 1977).[14]

The parties assert that the proposed settlement satisfies the factors for court approval of a class action settlement under Rule 23(e), Fed. R. Civ. P. See Joint Motion (Doc. #67) at 4 (citing Jones v. Nuclear Pharmacy, Inc., 741 F.2d 322, 324 (10th Cir. 1984)).[15] Those factors provide a

---

[13] The proposed settlement provides that any funds remaining at the close of the claims period will revert to defendant. See Exhibit A to Doc. #67 ¶ III(A)(1)(e). It is unclear whether funds might remain because not all plaintiffs opted into the settlement, whether funds might remain even if all plaintiffs opted in but defendants' books and records did not support distribution of the full settlement to plaintiffs, or whether funds might remain under some other scenario.

[14] Although the Tenth Circuit has held that Section 216(b) does not incorporate the Rule 23 requirements of numerosity, commonality, typicality and adequacy of representation, see Thiessen, 267 F.3d at 1103, the adequacy of class counsel and class representatives is a relevant consideration because the court has an inherent interest in ensuring that opt-in plaintiffs are adequately represented. See Brown, 222 F.R.D. at 682; Fortna v. QC Holdings, Inc., No. 06-CV-0016- CVE-PJC, 2006 WL 2385303, at * 9 (N.D. Okla. Aug. 17, 2006).

[15] To determine whether a settlement is fair, reasonable and adequate under Rule 23(e), the Court considers the following factors:

(1) whether the proposed settlement was fairly and honestly negotiated;

(continued...)

-10-

general framework for the Court's determination whether an FLSA settlement is fair, but they are not determinative. The Court must also considers factors relevant to the history and policy of the FLSA. See Dees, 706 F. Supp. 2d at 1241. Here, the parties provide no information regarding (1) defendant's business; (2) the type of work performed by plaintiffs; (3) the facts underlying plaintiffs' reasons for justifying their claims; (4) defendant's reasons for disputing plaintiffs' claims; (5) the relative strength and weaknesses of plaintiffs' claims; (6) the relative strength and weaknesses of defendant's defenses; (7) whether the parties dispute the computation of wages owed; (8) each party's estimate of the number of hours worked and the applicable wage; or (9) the maximum amount of recovery to which plaintiffs claim they would be entitled if they successfully proved their claims. Without such information, the Court cannot determine whether the proposed settlement is a fair and reasonable compromise of plaintiffs' claims.

### C. Proposed Incentive Fee

The proposed settlement provides an incentive payment of $1,082.30 to Peterson. See Exhibit A to Doc. #67 ¶ III(A)(1)(b). The parties provide no information regarding the nature of Peterson's involvement, the number of hours which he invested or whether he gave a deposition or provided other information in the case. Without such information, the Court cannot determine whether the proposed incentive award is fair and reasonable. See, e.g., Bruner v. Sprint/United

---

[15](...continued)
  (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
  (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
  (4) the judgment of the parties that the settlement is fair and reasonable.

Rutter & Wilbanks Corp. v. Shell Oil Co., 314 F.3d 1180, 1188 (10th Cir. 2002); Jones, 741 F.2d at 324.

Mgmt. Co., No. 07-2164-KHV, 2009 WL 2729911, at *3 (D. Kan. Aug. 25, 2009).

### D. Proposed Attorney's Fees

The proposed settlement provides payment of $28,050 – or 33 per cent of the settlement fund – to plaintiffs' counsel, Michael F. Brady and Mike Hodgson of Brady & Associates. Counsel seek payment based on a percentage of the common fund. They provide no information regarding the amount of time which they have spent on the matter.

With regard to attorney's fees in common fund cases, the Tenth Circuit applies a hybrid approach which combines the percentage fee method with the specific factors traditionally used to calculate the lodestar.[16] See Gottlieb, 43 F.3d at 483. The percentage reflected in a common fund award must be reasonable and, as in statutory fee cases, the district court must articulate specific reasons for fee awards demonstrating the reasonableness of the percentage and thus the reasonableness of the fee award. See Brown v. Phillips Petrol. Co., 838 F.2d 451, 454 (10th Cir. 1988). Here, counsel provide no information regarding the amount of time spent or a reasonable hourly rate for each attorney. Moreover, because the proposed settlement provides a possibility that some of the common fund could revert back to defendant, the Court cannot determine a reasonable attorney's fee based on a percentage of the common fund until after the time for reversion has

---

[16] The lodestar method looks to prevailing market rates in the community and roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case. See Perdue v. Kenny A. ex rel. Winn, 130 S. Ct. 1662, 1672 (2010).

In Perdue v. Kenny A., the Supreme Court found that a fee determined by the lodestar method may be enhanced only in rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee. See id. at 1673-75. The Supreme Court did not address whether a court may approve reasonable attorney's fees based on a percentage of the common fund. In any event, even if the Court applied a common fund approach, the time and labor required are relevant to determining whether the fee is reasonable. See Gottlieb v. Barry, 43 F.3d 474, 483 (10th Cir. 1994).

-12-

expired. On this record, the record does not contain information sufficient for the Court to determine whether the amount of proposed attorney's fees is reasonable.

**E. Conclusion**

In sum, the record does not support a finding that (1) final certification of a collective action is appropriate under FLSA Section 216(b) or (2) the proposed settlement is fair and reasonable.

**IT IS THEREFORE ORDERED** that the Joint Motion For Approval Of FLSA Collective Action Settlement And Dismissal With Prejudice (Doc. #66) filed October 19, 2010 be and hereby is **OVERRULED.**

Dated this 5th day of January, 2011 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge