# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SEAN P. MCCAFFREY, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) CIVIL ACTION |
| v. | ) No. 08-2660-KHV |
| | ) |
| MORTGAGE SOURCES, CORP., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Norman Peterson brings suit against Mortgage Sources, Corp. on behalf of himself and others similarly situated, seeking unpaid straight time, overtime premiums and related penalties and damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq.[1] On April 26, 2011, the Court entered a memorandum and order which overruled the parties' amended joint motion for approval of their proposed settlement. See Doc. #74. The Court noted that the proposed settlement distribution to Peterson – the named plaintiff – was more than ten times more money than that to any other plaintiff.[2] The Court found that without detailed information regarding length of employment and amount of weekly compensation for each employee, the proposed settlement allocation was not fair and reasonable.[3] See id. at 3. This matter comes before the Court on the Supplement To Parties' Amended Joint Motion For Approval Of FLSA Collective Action Settlement

---

[1] Sean P. McCaffrey and Lisa Kagy also filed suit but dismissed their claims without prejudice. See Docs. #1, #11, #59.

[2] The following six individuals have opted into the class: Gary Anderson, Janet Dooley, Linda Modrack, Robert Srejma, Elizabeth Watson and Lea Zich. All except Modrak worked as loan originators for defendant. Modrak worked as a loan processor for defendant.

[3] During a telephone conference on April 29, 2011, the parties agreed to provide additional information to support the proposed settlement allocation.

And Dismissal With Prejudice (Doc. #78) May 20, 2011, which the Court construes as a renewed motion for settlement approval.

In the renewed motion, the parties assert that the proposed settlement allocation is based on each class member's pro rata share of damages for unpaid overtime. See Doc. #78 at 3-4. Specifically, the parties state that they have calculated each class member's claim to overtime damages by looking at the amount of commissions which each class member earned during each pay period and calculating an overtime premium based on an assumption that all class members worked ten hours of overtime per week.[4] For pay periods in which class members earned no commissions or other pay, the parties attribute no overtime or other damages. Under the parties' calculations, the amount of overtime damages for class members in each pay period varies from zero to $2,998.05.[5]

---

[4] Defendant did not compensate employees on an hourly basis and did not track the number of hours which employees worked. The parties estimate that each plaintiff worked 50 hours, i.e. 40 regular hours plus 10 overtime hours each week. See Doc. #78 at 11.

As to loan originators, defendant paid commissions at specified rates regardless of the number of hours worked per week. See Doc. #78 at 2. The parties agree that defendant treated loan originators as exempt from FLSA overtime requirements. See id.

As to loan processors, the parties dispute whether defendant paid hourly wages. Plaintiffs contend that defendant paid salary plus bonuses, regardless of the number of hours worked. See id. Defendant contends that it paid on an hourly basis plus overtime, depending on number of hours worked. See id.

The record does not explain how (or whether), on these facts, loan processors and loan originators are similarly situated for purposes of final collective action certification.

[5] For the pay period ending February 28, 2007, Peterson earned $29,980.47, resulting in an overtime damage calculation of $2,998.05. See Exhibit 11 to Doc. #78.

Because defendant did not compensate on an hourly basis, the parties calculated a "regular rate" of hourly pay for each class member by taking the amount of money which he or she earned each week and dividing it by 50, i.e. the number of hours which the parties estimate that each plaintiff worked each week. See id. at 10-11. They then calculated an overtime premium rate for each pay period based on half of the regular rate of pay for that period. See id. at 11. To determine the amount of overtime damages, they multiplied the overtime premium rate by 10, i.e. the number of estimated overtime hours per week. See id. at 11-12.

(continued...)

For plaintiffs who have relatively small overtime claims, the parties have provided a minimum payment of $2,186.33, to account for claims of improper payroll deductions.[6] See Doc. #78 at 4-5, 14-17.

It appears that the proposed settlement allocation does not account for damages for unpaid straight time. As noted, many class members received no compensation for weeks in which they worked an estimated 50 hours. Under the FLSA, it appears that for those weeks, class members would be entitled to recover at least minimum wage for the first 40 hours worked, see 29 U.S.C. § 206(a),[7] plus time and a half for 10 hours of overtime. See 29 U.S.C. § 207(a)(1).[8] The proposed

---

[5](...continued)
      The parties state that defendant mostly paid employees twice a month, which calculates to an average of 2.15 weeks per pay period. At 50 hours of work per week, an employee would work an average of 107.5 hours per pay period (50 x 2.15 = 107.5), and an average of 21.5 hours of overtime per pay period (10 x 2.15 = 21.5).

      For instance, for the 2.15 week pay period ending May 31, 2007, Anderson earned $5,829.36. For that pay period, the parties calculated a regular rate of hourly pay of $54.23 ($5,829.36/107.5 = $54.23). Using that number, the parties calculated an overtime premium of $27.12 ($54.23/2 = $27.12). To determine damages for overtime pay, the parties multiplied the overtime premium by 21.5, i.e. the number of overtime hours for the pay period. For Anderson, the Court calculates overtime damages of $583.08 ($27.12 x 21.5 = $583.08). The parties' calculation is 14 cents less, or $582.94. It appears that the difference may result from rounding.

      Srejma worked for 20 pay periods, but only earned money in one pay period, the one ending January 15, 2008, in which he earned $4,709.06. Under the parties' calculation, Srejma is entitled to overtime damages of $470.91 for that pay period, but nothing for the 19 pay periods in which he earned nothing. See Exhibit 12 to Doc. #78.

[6] Plaintiffs allege that defendant improperly deducted monies from their compensation, including but not limited to defendant's share of payroll taxes, in violation of the Kansas Wage Payment Act, K.S.A. § 44-314. See Doc. #1 ¶ 81. The parties state that "the minimum allocation was added to the settlement agreement to ensure that no Plaintiff's individual amount of settlement proceeds would be less than what it would have been if the settlement apportionment formula had accounted for not only the alleged unpaid overtime, but also the alleged improper payroll deductions by Defendant." Doc. #78 at 5.

[7] Section 206(a) states as follows:

(continued...)

settlement allocation, however, provides no damages for those weeks. In other words, for weeks in which class members worked 50 hours and earned nothing, they receive no pro rata distribution from the settlement proceeds. The parties do not explain why class members should receive no damages for regular and overtime compensation for those pay periods.

In the complaint, plaintiffs asserted claims for unpaid straight time and overtime compensation. See Doc. #1 ¶¶ 1, 24-25, 44; see also Memorandum In Support Of The Parties' Amended Joint Motion For Approval Of FLSA Collective Action Settlement And Dismissal With Prejudice (Doc. #72) at 1 (in complaint plaintiffs alleged that defendant failed to pay straight time and overtime compensation in violation of FLSA).[9] The proposed settlement allocation provides

---

[7](...continued)
 Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates:
  (1) except as otherwise provided in this section, not less than--
   (A) $5.85 an hour, beginning on the 60th day after May 25, 2007;
   (B) $6.55 an hour, beginning 12 months after that 60th day; and
   (C) $7.25 an hour, beginning 24 months after that 60th day; * * *

29 U.S.C. § 206(a).

[8] Section 207(a)(1) states as follows:

Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

[9] In the complaint, plaintiff allege that defendant failed to pay straight time and
(continued...)

no pro rata share of damages for pay periods in which class members worked 50 hours a week and received no compensation. The record reveals no reason why class members should waive their claims for unpaid straight time pay and receive nothing under the settlement for such claims. On this record, the proposed settlement allocation is not fair and reasonable. On or before **June 24, 2011,** the parties may file a renewed motion to approve a proposed settlement which accounts for unpaid straight time and overtime compensation during pay periods in which class members worked 50 hours a week and received no pay, or explain why it is fair and reasonable for class members to receive nothing under the settlement for such pay periods.[10]

**IT IS THEREFORE ORDERED** that the Supplement To Parties' Amended Joint Motion For Approval Of FLSA Collective Action Settlement And Dismissal With Prejudice (Doc. #78) May 20, 2011, which the Court construes as a renewed motion for settlement approval, be and

---

[9](...continued)
overtime compensation in violation of the FLSA. See Doc. #1 ¶¶ 1, 24-25, 44. The prayer for relief requests damages for overtime compensation, but does not mention damages for straight time compensation. See id. at 9-10. The record reveals no reason why plaintiffs' attorneys would not seek damages for straight time compensation on behalf of class members who worked 50 hours per week with no pay.

[10] The Court expresses no opinion as to the amount of damages for straight time and overtime compensation which class members should receive. If the parties reallocate the settlement proceeds to provide damages for weeks in which class members worked 50 hours and received no pay, they should provide factual and legal authority to support the amount of damages which class members should receive for those periods.

Also, the Court makes no ruling as to whether loan processors are similarly situated to loan originators for purposes of final collective action certification. If the parties continue to seek to include one loan processor in the proposed settlement, they should explain how – given the differences in pay structure and defendant's defenses – loan processors are similarly situated to loan originators. In particular, the parties should focus on (1) the disparate factual and employment settings of loan processors versus loan originators; (2) the various defenses available to defendant which appear to be individual to loan processors versus loan originators; and (3) fairness and procedural considerations. See, e.g., Burkholder v. City of Ft. Wayne, 750 F. Supp.2d 990, 994 (N.D. Ind. 2010).

hereby is **OVERRULED.** On or before **June 24, 2011,** the parties may file a renewed motion to approve a proposed settlement which takes into account unpaid straight and overtime compensation for pay periods in which class members received no pay, or explain why it is fair and reasonable for class members to receive nothing under the settlement for those pay periods.

Dated this 14th day of June, 2011 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge