## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| NORMAN PETERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **CIVIL ACTION** |
| v. | ) | **No. 08-2660-KHV** |
| | ) | |
| MORTGAGE SOURCES, CORP., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Norman Peterson brings suit against Mortgage Sources, Corp. on behalf of himself and others similarly situated, seeking unpaid straight time, overtime premiums and related penalties and damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.[1] This matter comes before the Court on the parties' Renewed Amended Joint Motion For Approval Of FLSA Collective Action Settlement And Dismissal With Prejudice (Doc. #80) filed June 24, 2011 and plaintiff's Unopposed Motion And Memorandum For Approval Of Attorneys' Fees & Costs (Doc. #73) filed February 10, 2011.  For reasons stated below, the Court sustains both motions in part.

## I.    Factual Background

On December 24, 2008, Norman Peterson, Lisa Kagy and Sean McCaffrey filed putative collective action claims against defendant for violation of the FLSA.  See Doc. #1.[2] Their complaint alleged that in violation of the FLSA, defendant willfully failed to pay straight time and overtime

---

[1]       Sean P. McCaffrey and Lisa Kagy also filed suit but dismissed their claims without prejudice.  See Docs. #1, #11, #59.

[2]       Alternatively, plaintiffs asserted putative class action claims under the Kansas Minimum Wage Maximum Hours Law, K.S.A. §§ 1202 et seq., and the Kansas Wage Payment Act, K.S.A. §§ 44-313 et seq.  See Doc. #1.

compensation.  See id. ¶ 1.[3]  In addition, plaintiffs alleged that in violation of the Kansas Wage

Payment Act, K.S.A. § 44-314, defendant improperly deducted monies from their compensation,

including defendant's share of payroll taxes.  See id. ¶ 81.

On August 27, 2009, pursuant to 29 U.S.C. § 216(b), for purposes of providing notice of the

action to all putative class members, the Court conditionally certified a collective action of loan

officers who did not receive all straight time or who worked more than 40 hours a week and did not

receive overtime premiums for three years before the date of certification.  See Doc. #37 at 1, 3.  The

Court designated Peterson and McCaffrey as class representatives.  See id. at 8.  On January 15,

2010, the Court sustained the parties' joint motion to broaden distribution of opt-in notifications to

include loan processors.  See Doc. #46.  The Court ordered plaintiffs to disseminate notice to

potential class members by January 29, 2010.  See id.  In response to the notice to potential class

members, the following six individuals opted to join the class: Gary Anderson, Janet Dooley, Linda

Modrak, Robert Srejma, Elizabeth Watson and Lea Zich.  See Docs. #35, 47-52.[4]  All but Modrak

worked for defendant as loan originators.  Modrak worked as a loan processor.

On September 20, 2010, Peterson entered into a settlement agreement with defendant.  See

Exhibit A to Doc. #67.  The agreement does not bind the six individuals who opted into the

conditionally certified class unless they affirmatively agree to be bound by the settlement.  See id.

---

[3]      On February 26, 2009, the Court granted Kagy's request to dismiss her claims without prejudice.  See Doc. #11.

[4]      Another individual, James Julian, opted to join the class but then requested to be dismissed.  See Docs. #50, #53.  On March 3, 2010, the Court granted plaintiffs' motion to dismiss Julian without prejudice.  See Doc. #53.

On August 3, 2010, the Court granted plaintiffs' motion to dismiss McCaffrey's claims with prejudice.  See Docs. #58, #59.

¶ III(A)(1)(e) and (F); see also Joint Motion (Doc. #66) at 5-6.

The terms of the proposed settlement are as follows: defendant will contribute $85,000 to a global settlement fund which includes attorney's fees and costs. See Exhibit A to Doc. #67 ¶ III(A)(1). The amount will be distributed as follows: (1) $28,050 in attorney's fees and expenses; (2) $1,082.30 to Peterson for acting as class representative and litigating the matter; and (3) the remainder distributed to class members pro rata, based on alleged overtime hours worked and applicable overtime rate of each class member, with a minimum of $2,186.33 to each class member. See id. ¶ III(A)(1)(a)-(c). To participate in the settlement, class members must release wage or salary compensation claims which arise from their employment with defendant. See id. ¶ III(A)(1)(e). Class members will have 30 days from the date of mailing of the notice of settlement to opt in. See id. Any funds remaining at the close of the claims period will revert to defendant. See id.

On October 19, 2010, the parties filed a joint motion for court approval of the proposed settlement. See Doc. #66. On January 5, 2011, the Court overruled the motion. See Memorandum And Order (Doc. #68). The Court found that the parties had not provided information regarding whether the plaintiffs are "similarly situated," so it could not make a final determination as to whether the action should proceed as a collective action. See id. at 7. In addition, the Court found that the parties did not provide information sufficient to show that the litigation involved a bona fide dispute and that the proposed settlement is fair and equitable to all parties concerned.[5] See id. at 8-

---

[5]       Specifically, the Court found that the parties did not provide information regarding (1) how they determined a minimum payment of $2,186.33; (2) whether the number of overtime hours which plaintiffs allege they worked is consistent with what is reflected in defendant's books and records; (3) what recourse, if any, a class member would have if he or she disagrees with the pro

(continued...)

11. Finally, the Court found that the record did not contain information sufficient to determine whether the amount of proposed attorney's fees is reasonable.  See id. at 12-13.

On February 10, 2011, the parties filed an amended motion for court approval of the proposed settlement.  See Doc. #71.  In support of the amended motion, the parties asserted that among class members, they planned to distribute the proposed settlement fund as follows:

| Name | Total Overtime Damages[6] | Settlement Recovery |
|------|---------------------------|---------------------|
| Anderson, Gary | $ 12,457.78 | $ 2,847.50 |
| Dooley, Janet | $ 13,661.25 | $ 3,246.15 |
| Modrack, Linda | $  8,941.50 | $ 2,164.10 |
| Peterson, Norman | $158,610.59 | $39,865.00 |
| Sjrema, Robert | $ 14,301.63 | $ 3,417.00 |
| Watson, Elizabeth | $ 13,394.33 | $ 2,961.40 |
| Zich, Lea | $ 11,542.78 | $ 2,448.85 |
| TOTAL | $232,909.86 | $56,950.00 |

See Doc. #72 and exhibit 2 thereto.  Also, on February 10, 2011, plaintiff filed a motion for court approval of proposed attorney's fees under the settlement.  See Doc. #73.

On April 26, 2011, the Court entered a memorandum and order which overruled the amended

---

[5](...continued)
rata determination; (4) the circumstances under which funds could remain at the close of the claims period and revert to defendant; or (5) whether a class member's pro rata distribution could increase or decrease based on the number of class members who opt in the settlement.  See Doc. #68 at 9-10.

Also, the parties did not provide information regarding (1) defendant's business; (2) the type of work performed by plaintiffs; (3) the facts underlying plaintiffs' reasons for justifying their claims; (4) defendant's reasons for disputing plaintiffs' claims; (5) the relative strength and weaknesses of plaintiffs' claims; (6) the relative strength and weaknesses of defendant's defenses; (7) whether the parties dispute the computation of wages owed; (8) each party's estimate of the number of hours worked and the applicable wage; or (9) the maximum amount of recovery to which plaintiffs claim they would be entitled if they successfully proved their claims.  See id. at 11.

[6]      For each class member, the total overtime damage calculation which the parties submitted on February 20, 2011 is significantly more than the total overtime damage calculation which they submitted on May 20, 2011.  Compare Doc. #72 at 5-7 and exhibit 2 with Doc. #78 at 12 and exhibit 15.  The record does not explain the discrepancy.

-4-

motion for court approval of the proposed settlement.  See Doc. #74.  The Court found that the proposed allocation gave Peterson – the named plaintiff – over ten times more money than any other plaintiff and that without detailed information regarding length of employment and amount of weekly compensation for each plaintiff, the proposed settlement allocation on its face was not fair and reasonable.  See id. at 3.

On April 29, 2011, the Court held a telephone conference.  See Doc. #75.  The parties agreed to provide additional information to support the proposed settlement allocation.

On May 9, 2011, the Court ordered that with respect to the motion to approve attorneys' fees, plaintiff could supplement the motion with affidavits to verify hours spent on the case, as well as education, experience and billing rate of each attorney and paralegal who billed time in the case. See Doc. #76.  On May 20, 2011, plaintiff filed a supplement to his motion for attorneys' fees.  See Doc. #77.

Also, on May 20, 2011, the parties filed a renewed motion for settlement approval.  See Doc. #78.  In the renewed motion, the parties asserted that the proposed settlement allocation is based on each class member's pro rata share of damages for unpaid overtime.  See id. at 3-4.  In addition, for plaintiffs who have relatively small overtime claims, the parties allowed a minimum payment of $2,186.33 to account for claims of improper payroll deductions.  See id. at 4-5, 14-17. The parties stated that "the minimum allocation was added to the settlement agreement to ensure that no Plaintiff's individual amount of settlement proceeds would be less than what it would have been if the settlement apportionment formula had accounted for not only the alleged unpaid overtime, but

also the alleged improper payroll deductions by Defendant."[7]  Doc. #78 at 5.  Specifically, the

parties proposed to distribute the settlement fund as follows:

| Name | Total Overtime Damages[8] | Settlement Recovery |
|------|---------------------------|---------------------|
| Anderson, Gary | $  1,342.42 | $  2,311.47 |
| Dooley, Janet | $     650.00 | $  2,186.33 |
| Modrack, Linda | $  4,547.64 | $  7,830.42 |
| Peterson, Norman | $ 21,477.00 | $36,980.49 |
| Sjrema, Robert | $     470.91 | $  2,186.33 |
| Watson, Elizabeth | $  1,153.64 | $  2,186.33 |
| Zich, Lea | $  1,222.38 | $  2,186.33 |
| TOTAL | $ 30,863.99 | $55,867.70 |

See Doc. #78 at 12 and exhibit 15 thereto.

On June 14, 2011, the Court overruled the renewed motion.  See Doc. #79.  The Court found

that the proposed settlement allocation did not account for damages for unpaid straight time.  See

id. at 3.  Specifically, the Court noted that many class members received no compensation for weeks

in which they worked an estimated 50 hours and that under the FLSA, for those weeks, class

members would be entitled to recover at least minimum wage for the first 40 hours worked plus time

---

[7]        The parties stated that the amount of payroll deductions suffered by Peterson dwarfed any other plaintiff's payroll deductions and that by accepting the settlement on behalf of plaintiffs, Peterson agreed to the minimum allocation method to account for payroll deductions – instead of including payroll deductions in the pro rata computation – which had the effect of decreasing his own settlement allocation.  See id. at 4-5, 15.  The parties stated that they believe that the minimum allocation method of adjusting the settlement allocation is a fair way of accounting for alleged improper payroll deductions.  See id. at 15-16.

[8]        As noted, the total overtime damage calculations which the parties submitted on May 20, 2011, are significantly less than the total overtime damage calculations which they submitted on February 10, 2011.  The record does not explain the disparity.

In the motion filed May 20, 2011, the parties stated that the amounts of settlement recovery are "slightly different" from previous numbers due to "Plaintiff's counsel discovering that the spreadsheet used for the previously provided allocation erroneously included, as an element of overtime damages, an accounting of Defendant's deductions from Plaintiffs' commission compensation."  Doc. #78 at 14-15.

and a half for 10 hours of overtime.  See id. at 3.  The Court ruled that on or before June 24, 2011, the parties could file a renewed motion to approve a proposed settlement which accounts for unpaid straight time and overtime compensation during pay periods in which class members worked 50 hours a week and received no pay.  See id. at 6.

On June 24, 2011, the parties filed a second renewed motion for court approval of the settlement.  See Doc. #80.  In this motion, the parties propose a pro rata distribution based on damage calculations for unpaid overtime and straight time pay and improper payroll deductions.  See Doc. #80 and Exhibit 8 thereto.  Specifically, the damage calculation includes overtime damage calculations set forth in the motion filed May 20, 2011 and also includes damages for (1) minimum wage plus overtime for weeks in which class members worked 50 hours and received no compensation or less than minimum wage; and (2) improper payroll deductions.  See Doc. #78 at 2; Doc. #80 at 3-4.

For weeks in which class members worked 50 hours and received no compensation or less than minimum wage, the parties calculate the following damages:

| Name | Total Minimum Wage Damages |
|------|---------------------------|
| Anderson, Gary | $  4,262.91 |
| Dooley, Janet | $  4,262.91 |
| Modrack, Linda | $     415.32 |
| Peterson, Norman | $  7,307.85 |
| Sjrema, Robert | $ 13,226.26 |
| Watson, Elizabeth | $  8,082.39 |
| Zich, Lea | $   3,872.69 |
| TOTAL | $ 41,430.33 |

See Doc. #80 at 4 and exhibit 15 thereto.

In addition, the parties calculate the following damages for improper payroll deductions:[9]

| Name | Total Payroll Deduction Damages |
| --- | --- |
| Anderson, Gary | $   3,451.68 |
| Dooley, Janet | $   4,794.50 |
| Modrack, Linda | $         0.00 |
| Peterson, Norman | $ 64,769.92 |
| Sjrema, Robert | $   1,488.36 |
| Watson, Elizabeth | $   2,566.47 |
| Zich, Lea | $    3,686.45 |
| TOTAL | $ 80,757.38[10] |

See Doc. #80 at 4 and exhibit 15 thereto.

Under the revised allocation, the parties propose to distribute the settlement fund as follows:

_____

[9]       In the May 20, 2011 motion, the parties provided the same calculations for improper payroll deductions. See Exhibits 16-22 to Doc. #78. As noted, in that motion, the parties stated that the proposed settlement includes a alternative minimum payment of $2,186.33 to ensure that no plaintiff receives less than he or she would if the settlement apportionment formula accounted for improper payroll deductions in addition to unpaid overtime. See Doc. #78 at 5. The parties stated that the amount of payroll deductions suffered by Peterson dwarfed any other plaintiff's payroll deductions and that by accepting the settlement on behalf of plaintiffs, Peterson agreed to the minimum allocation method to account for payroll deductions – instead of including payroll deductions in the pro rata computation – which had the effect of decreasing his own settlement allocation. See id. at 4-5, 15. The parties stated that they believed that the minimum allocation method of adjusting the settlement allocation is a fair way of accounting for alleged improper payroll deductions. See id. at 15-16. The parties do not explain why they have now included improper payroll deductions in the damage calculations submitted on June 24, 2011.

[10]       Exhibit 15 indicates that total payroll deduction damages equal $72,294.32. See Exhibit 15 to Doc. #80. The Court's calculation amounts to $80,757.38.

| Name | Total Damages Including Overtime, Minimum Wage and Payroll Deductions | Pro Rata Recovery |
|---|---|---|
| Anderson, Gary | $  9,057.01 | $  3,283.12 |
| Dooley, Janet | $  9,707.41 | $  3,518.88 |
| Modrack, Linda | $  4,962.96 | $  2,186.33 |
| Peterson, Norman | $ 93,554.77 | $ 33,913.10 |
| Sjrema, Robert | $ 15,185.53 | $  5,504.67 |
| Watson, Elizabeth | $ 11,802.50 | $  4,278.34 |
| Zich, Lea | $  8,781.52 | $  3,183.25 |
| TOTAL | $153,051.70 | $ 55,867.69 |

See Doc. #80 at 4 and exhibit 15 thereto.

## II.    Legal Standards

### A.    FLSA Collective Action Certification

The FLSA provides that an employee may bring a collective action on behalf of other employees who are "similarly situated." 29 U.S.C. § 216(b).[11] The Tenth Circuit has approved a two-step approach to determining whether plaintiffs are "similarly situated" for purposes of FLSA Section 216(b). Thiessen v. GE Capital Corp., 267 F.3d 1095, 1105 (10th Cir. 2001).[12] Under this

---

[11]      Section 216(b) states in part as follows:

An action to recover [for FLSA violations] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

[12]      Thiessen involved a collective action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq.   Because the ADEA adopts the collective action mechanism set forth in FLSA Section 216(b), Thiessen applies to FLSA collective actions. See Kaiser v. At The Beach, Inc., No. 08-CV-586-TCK-FHM, 2010 WL 5114729, at *4 n.9 (N.D. Okla.

(continued...)

approach, a court typically makes an initial "notice stage" determination whether plaintiffs are "similarly situated." Id. at 1102. That is, the district court makes a conditional determination whether a collective action should be certified for purposes of sending notice of the action to potential class members. See Brown, 222 F.R.D. at 679. For conditional certification at the notice stage, the court requires "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." Thiessen, 267 F.3d at 1102 (quotations and citations omitted). The standard for certification at the notice stage is a lenient one which typically results in class certification. See Brown, 222 F.R.D. at 679.

At the conclusion of discovery (often prompted by a motion to decertify), the Court makes a second collective action determination using a stricter standard of "similarly situated." Thiessen, 267 F.3d at 1102-03. During this second stage analysis, the Court considers several factors including (1) the disparate factual and employment settings of individual plaintiffs; (2) various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations. See id. at 1103.[13] Where parties settle FLSA claims before the Court has made a final collective action ruling, the Court must make some final class certification finding before it can approve a collective action settlement. See Burkholder v. City of Fort Wayne, 750 F. Supp.2d 990, 993 (N.D. Ind. 2010); Murillo v. Pac. Gas & Elec. Co., No. CIV. 2:08-1974 WBS GGH, 2010 WL 2889728, at *2 (E.D. Cal. July 21, 2010).

---

[12](...continued)
Dec. 9, 2010); see also Brown v. Money Tree Mortg., Inc., 222 F.R.D. 676, 679 (D. Kan. 2004).

[13]     Thiessen lists a fourth factor, i.e. whether plaintiffs made the filings required by the ADEA before instituting suit. See Thiessen, 267 F.3d at 1103. That factor does not apply in FLSA cases. See Kaiser, 2010 WL 5114729, at *3 n.6.

**B.     FLSA Collective Action Settlement**

When employees file suit against their employer to recover back wages under the FLSA, the parties must present any proposed settlement to the district court for review and a determination whether the settlement is fair and reasonable.  See Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353 (11th Cir. 1982).  To approve an FLSA settlement, the Court must find that the litigation involves a bona fide dispute and that the proposed settlement is fair and equitable to all parties concerned.  See id. at 1354.  The Court may enter a stipulated judgment only after scrutinizing the settlement for fairness.     See  Baker  v.  D.A.R.A.  II,  Inc., No. CV-06-2887-PHX-LOA, 2008 WL 4368913, at *2 (D. Ariz. Sept. 24, 2008).  The FLSA also requires that a settlement agreement include an award of reasonable attorney's fees.  See Lee v. The Timberland Co., No. C 07-2367-JF, 2008 WL 2492295, at *2 (N.D. Cal. June 19, 2008).  Further, when a plaintiff has voluntarily assumed the fiduciary role of class representative, the Court must determine "whether the settling plaintiff has used the class action claim for unfair personal aggrandizement in the settlement, with prejudice to absent putative class members."  Shelton v. Pargo, Inc., 582 F.2d 1298, 1314 (4th Cir. 1978).

**C.     Attorney's Fees**

The FLSA entitles a prevailing plaintiff to recover "a reasonable attorney's fee . . . and costs of the action."  See, e.g. Gray v. Phillips Petroleum Co., 971 F.2d 591, 593 (10th Cir. 1992) (quoting 29 U.S.C. § 216(b)).  For purposes of attorney's fees, plaintiff is considered a "prevailing party" if he succeeds on any significant issue in litigation which achieves some of the benefit he sought in bringing suit.  Jackson v. Austin, 267 F. Supp.2d 1059, 1063 (D. Kan. 2003).  Though the court has discretion to determine the amount and reasonableness of the fee, the FLSA fee award is mandatory.

Wright v. U-Let-Us Skycap Serv., Inc., 648 F. Supp. 1216, 1218 (D. Colo. 1986).

## II.     Analysis

The parties ask the Court to approve their proposed settlement of FLSA collective action claims.  In addition, plaintiff asks the Court to approve payment of $28,050 in attorney's fees under the settlement.

### A.     Settlement Approval

If the settlement reflects a reasonable compromise over issues such as FLSA coverage or computation of back wages that are actually in dispute, the Court may approve the settlement to promote the policy of encouraging settlement of litigation.  See Lynn's Food Stores, 679 F.2d at 1354.  Because the parties have settled FLSA claims before the Court has made a final collective action ruling, the Court must make some final class certification finding before it can approve a collective action settlement.  See Burkholder, 750 F. Supp.2d at 993; Murillo, 2010 WL 2889728, at *2.

### 1.     Final Collective Action Certification

The parties ask the Court to certify a final collective action of six loan originators (Peterson, Anderson, Dooley, Srejma, Watson and Zich) and one loan processor (Modrak).  The record contains no evidence regarding whether plaintiffs are similarly situated.  In determining whether loan officers and loan processors are "similarly situated" for purposes of final collective action certification, the Court considers several factors including (1) the disparate factual and employment settings of individual plaintiffs; (2) various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations.  See

-12-

<u>Thiessen</u>, 267 F.3d at 1103.[14]

As to the first factor, <u>i.e.</u> disparate factual and employment settings of individual plaintiffs, the record does not show that loan officers and loan processors are similarly situated.  The parties assert the following facts:[15]  Loan originators solicited customers for home loans, matched customer needs with specific loan terms and forwarded the file to a loan processor.  Doc. #72 at 8; Doc. #78 at 1.  Loan processors utilized the customer information which loan originators obtained to prepare documentation to process the loan application for approval.  Doc. #72 at 8; Doc. #78 at 1.  Loan originators typically worked from remote locations, rather than in a fixed office. Doc. #78 at 2-3. The record does not disclose where loan processors worked.  Defendant paid loan originators based only on commissions.  Defendant paid loan processors a salary plus commission.  Doc. #78 at 8.

As to the second factor, <u>i.e.</u> various defenses available to defendant which appear to be individual to each plaintiff, it appears that loan officers and loan processors are not similarly situated.  Regarding loan originators, defendant acknowledged that it did not pay overtime.  Doc. #72 at 3.  Defendant contended that loan originators were *de facto* independent contractors and fell under the "outside sales" exemption of the FLSA.  Doc. #72 at 2.

Regarding loan processors, the parties disputed whether defendant paid overtime.  Defendant contended that it paid on an hourly basis, including overtime, and that loan processors received proper pay for all hours worked.  Doc. #72 at 3; Doc. #78 at 2.  Plaintiffs contended that defendant paid loan processors a salary plus bonuses, regardless of overtime.  Doc. #72 at 9; Doc. #78 at 2.

---

[14]     <u>Thiessen</u> lists a fourth factor, <u>i.e.</u> whether plaintiffs made filings required by the ADEA before instituting suit.  <u>See Thiessen</u>, 267 F.3d at 1103.  That factor does not apply in FLSA cases.  <u>See Kaiser</u>, 2010 WL 5114729, at *3 n.6.

[15]     The parties present no affidavits or other evidence to support their assertions.

As to the third factor, i.e. fairness and procedural considerations, the parties' briefs are silent on this issue.  As noted, the proposed class includes six loan originators and one loan processor. The loan processor presumably believes that she will receive a portion of the settlement fund.  To the extent that her factual and legal claims differ from those of loan originators, however, it would not be fair to other class members to include her in the settlement class.

Plaintiffs assert that loan originators and loan processors are similarly situated because their work was functionally integrated and defendant treated both as exempt from overtime.  Doc. #80 at 7.  In support of the assertion, plaintiffs cite Garcia v. Freedom Mortg. Corp., No. 09-2668, 2011 U.S. Dist. LEXIS 66212 (D.N.J. June 10, 2011).  In that case, the Court denied defendant's motion to decertify an FLSA class comprised of loan officers and loan processors.  Plaintiffs sought unpaid overtime pay.  The Court found that plaintiffs had presented adequate evidence to show that class members were similarly situated.  See id. at *10.  In particular, the court found that plaintiffs had shown that (1) they had similar job duties, responsibilities and compensation structures; (2) defendant subjected them to the same policy and practice of treating them as exempt from FLSA overtime requirements; and (3) they asserted common claims of failure to pay overtime compensation.  See id.

Here, it appears that loan originators and loan processors have different job duties, responsibilities and compensation structures.  Loan originators solicited information from customers, matched their needs with specific loan products and forwarded the file to a loan processor.  Loan processors utilized customer information to prepare documentation to process the loan application for approval.  Loan originators typically worked from remote locations, rather than in a fixed office, and defendant paid them based only on commissions.  Loan processors, on the

other hand, received salary plus commission. The parties agree that defendant treated loan originators as exempt from overtime requirements. The parties dispute, however, whether defendant paid loan processors overtime. The difference in pay is apparent in the damage calculations. Because defendant paid loan processors a salary, Modrak has little or no claim to damages for unpaid straight time.[16]  See Exhibit 8 to Doc. #80. In addition, Modrak has no claim for improper payroll deductions.[17]  See Exhibit 8 to Doc. #80.

Defendant's defenses varied with regard to each position. As to loan originators, defendant admitted that it did not pay overtime and asserted they were independent contractors and exempt from FLSA overtime requirements. As to loan processors, defendant apparently agreed that the FLSA applied but asserted that it had paid all overtime which was due. Regarding loan originators, the case involves legal issues regarding whether FLSA overtime requirements apply. Regarding loan processors, the case involves factual issues whether defendant in fact paid Modrak for overtime worked.

On this record, the parties have not shown that loan originators and loan processors are "similarly situated" for purposes of certifying a final collective action under the FLSA. Accordingly, the Court will certify a final collective action as to only loan originators.

---

[16]      The parties calculate that Modrak is entitled to $415.32 in unpaid minimum wages. See Exhibit 8 to Doc. #80. Defendant apparently paid Modrak a salary of $1,500.00 for every pay period except one. See Exhibit 3 to Doc. #80. In that pay period, defendant paid Modrak "other income" of $276.44, which the parties deduct from total minimum wages due of $691.76. See id. The record does not explain why defendant did not pay Modrak a salary during that pay period.

[17]      According to the parties' damage calculations, Modrak is entitled to zero damages for improper payroll deductions. See Exhibit 8 to Doc. #80. Her pro rata share of the settlement is $1,811.60, however, which the parties adjust upward to $2,186.33, i.e. the alternative minimum settlement allocation to account for improper payroll deductions. See id.

### 2.    FLSA Collective Action Settlement

To approve the proposed settlement, the Court must find that the litigation involves a bona fide dispute and that the proposed settlement is fair and equitable to all parties concerned. See Lynn's Food Stores, 679 F.2d at 1354.

### a.    Bona Fide Dispute

The parties assert that a bona fide dispute exists as to (1) whether loan originators are *de facto* independent contractors; (2) whether loan originators fall under the "outside sales" exemption of the FLSA; and (3) whether plaintiffs worked more than 40 hours per week. Doc. #72 at 2-3; Doc. #78 at 2-3.  Based on these assertions, the Court finds that the litigation involves a bona fide dispute.

### b.    Fair And Reasonable

In its previous order, the Court found that the proposed settlement allocation was not fair and reasonable because it did not account for damages for pay periods in which class members worked 50 hours per week and earned no commissions or pay.  See Doc. #79 at 2-5.  The Court ordered the parties to either (1) file a renewed motion to approve a proposed settlement which accounts for unpaid straight time and overtime compensation during pay periods in which class members worked 50 hours a week and received no pay, or (2) explain why it is fair and reasonable for class members to receive nothing under the settlement for such pay periods.  See id. at 5.  In response to that order, the parties propose a pro rata settlement allocation based on (1) unpaid overtime pay; (2) minimum wage calculations for unpaid straight time and overtime pay for periods in which class members worked 50 hours a week and received no pay; and (3) improper payroll deductions.  See Doc. #80 at 2-6 and Exhibit 8 thereto.

-16-

The parties do not explain why they include improper payroll deductions in the revised pro rata damage calculation.  As noted, the settlement agreement provides an alternative minimum payment of $2,186.33 to account for claims of improper payroll deductions.  See Doc. #78 at 4-5, 14-17.  In an earlier motion, the parties stated that Peterson agreed to the minimum allocation method to account for payroll deductions – instead of including payroll deductions in the pro rata computation – knowing that it had the effect of decreasing his own settlement allocation.  See id. at 4-5, 15.  The parties stated that they believed the alternative minimum allocation method was a fair way to account for alleged improper payroll deductions.  See id. at 15-16.  On this record, the Court finds that it is not fair and reasonable to include damages for improper payroll deductions in the new pro rata settlement allocation.  Accordingly the Court will determine a fair and reasonable settlement allocation based on damages for unpaid overtime pay and minimum wage calculations for unpaid straight time and overtime pay for periods in which class members worked 50 hours a week and received no pay.

Based on information submitted by the parties, the Court directs the parties to apportion the settlement fund pro rata as follows:

| Name | Overtime Damages | Min. Wage Damages | Total Damages | Pro Rata Share |
|------|------------------|-------------------|---------------|----------------|
| Anderson, Gary | $  1,342.42 | $  4,262.91 | $  5,605.33 | .083 |
| Dooley, Janet | $     650.00 | $  4,262.91 | $  4,912.91 | .073 |
| Peterson, Norman | $ 21,477.00 | $  7,307.85 | $ 28,784.85 | .428 |
| Sjrema, Robert | $     470.91 | $ 13,226.26 | $ 13,697.17 | .203 |
| Watson, Elizabeth | $  1,153.64 | $  8,082.39 | $  9,236.03 | .137 |
| Zich, Lea | $  1,222.38 | $  3,872.69 | $  5,095.07 | .076 |
| TOTAL | $ 26,316.35 | $ 41,015.01 | $ 67,331.36 | 1.00 |

See Exhibit 8 to Doc. #80.

As noted, the settlement provides payment of $85,000 to plaintiffs.  After deducting

-17-

attorney's fees of $28,050 and an incentive fee of $840 (discussed below), $56,110.00 remains to distribute to class members.  Based on the above analysis, class members shall receive the following allocation from the settlement fund:[18]

| Name | Pro Rata Share | Settlement Allocation |
|---|---|---|
| Anderson, Gary | .083 | $ 4,657.13 |
| Dooley, Janet | .073 | $ 4,096.03 |
| Peterson, Norman | .428 | $ 24,015.08 |
| Sjrema, Robert | .203 | $ 11,390.33 |
| Watson, Elizabeth | .137 | $ 7,687.07 |
| Zich, Lea | .076 | $ 4,264.36 |
| TOTAL | 1.00 | $ 56,110.00 |

These distribution amounts are directly proportionate to length of employment and amount of compensation earned by each class member.  Peterson receives the most, i.e. $24,015.08.  He worked for defendant the longest (14 and a half months) and earned the most compensation ($214,769.98).  See Exhibit 11 to Doc. #78.  Srejma and Watson receive the next largest amounts, i.e. $11,390.33 and $7,687.07, respectively. Srejma worked for defendant for nine and a half months and Watson worked seven months.  See Exhibits 12 and 13 to Doc. #78.  Anderson worked four months and receives $4,657.13.  Dooley and Zich each worked three and half months and receive $4,096.03 and $4,264.36, respectively.  See Exhibits 8, 9 and 14 to Doc. #78.  On this record, the Court determines that said allocation of the settlement proceeds is fair and reasonable.

---

[18]     As discussed below, the amount of attorney's fees could decrease depending on whether all class members opt in the settlement.  If some class members do not opt in the settlement, counsel's fees will decrease and additional money will be available to distribute to class members. See Doc. #77 at 8.

### c.      Incentive Fee

The parties ask the Court to award Peterson an incentive fee of $1,082.30. See Exhibit A to Doc. #67 ¶ III(A)(1)(b).  In support of the award, the plaintiff provides affidavit testimony that Peterson spent approximately 15 hours participating in conferences with attorneys and staff, 15 hours retrieving documents for the case and 10 to 12 hours in discussions with named plaintiffs, opt-in plaintiffs and prospective opt-in plaintiffs.  See Exhibit 3 to Doc. #72.  Based on this evidence, it appears that plaintiff spent approximately 42 hours working on the case.  On this record, the Court finds that $20.00 per hour is a reasonable incentive fee.  See, e.g., In re Sprint Corp. ERISA Litig., 443 F. Supp.2d 1249, 1271 (D. Kan. 2006) (awarding $5,000 to named plaintiffs who spent average of 80 hours each to litigation).  Accordingly, the Court will award an incentive fee of $840.00.[19]

### B.      Attorney's Fees

The settlement agreement provides that subject to Court approval, plaintiff's counsel will receive for fees and costs $28,050.00 – or 33 per cent of the settlement fund.  See Exhibit A to Doc. #67 ¶ III(A)(1)(a).

Plaintiff seeks reimbursement for costs of $2,119.80 (a filing fee of $350.00, postage of $74.80 and mediation fees of $1,695.00).  See Exhibit 1 to Doc. #73.  On this record, the Court finds that the costs are reasonable.  Subtracting costs of $2,119.80 from the total fee request of $28,050.00 leaves $25,930.20 in attorney's fees – or 30.5 per cent of the total settlement fund.[20]

The settlement agreement provides that defendant will not oppose the application or contend

---

[19]      $20.00 x 42 hours = $840.00.

[20]      $25,930.20/$85,000.00 = .30506.

that the requested amount is unreasonable.  See id.  In Bruner v. Sprint/United Mgmt. Co., No. 07-

2164-KHV, 2009 WL 2058762 (D. Kan. July 14, 2009), this Court expressed concern about

settlement agreements in which defendants agree not to object or oppose any given fee request.  See

id. at *10.  Specifically, the Court stated as follows:

> Such agreements deprive the court of a full record and benefits of the adversary
> process.    They  encourage  plaintiffs'  counsel  to  maintain  inadequate
> contemporaneous time records and to submit their fee requests on records which
> cannot withstand the adversary process.  They promote a lackadaisical approach to
> fee litigation – regrettably forcing the Court to act as adversary to plaintiffs' counsel
> in examining fee applications.  They can lead to unreasonable fee requests.  To top
> it off, such stipulations have no apparent benefit to plaintiffs.  The only beneficiaries
> are plaintiffs' counsel . . . who would insulate their fee requests from scrutiny
> through the adversary process.

Id.  The Court warned that in the future, "it will skeptically examine and presumably overrule any

fee proposal which is presented in a non-adversarial context."  Id.  Here, because the parties have

stipulated that defense counsel will not object to the fee request, the Court must act as adversary to

plaintiff's counsel and skeptically examine the fee request.  See id.

As noted, the FLSA entitles a prevailing plaintiff to recover "a reasonable attorney's fee . . .

and costs of the action."  29 U.S.C. § 216(b); see, e.g. Gray v. Phillips Petrol. Co., 971 F.2d 591,

593 (10th Cir. 1992).  Though the fee is mandatory, the Court has discretion to determine the

amount and reasonableness of the fee.  See Wright, 648 F. Supp. at 1218.  When a common fund

is created by settlement, courts have applied one of two methods in determining reasonable

attorney's fee awards: a percentage of the fund or the lodestar method.[21]   See Rosenbaum v.

---

[21]     The lodestar method looks to prevailing market rates in the community and roughly
approximates the fee that the prevailing attorney would have received if he or she had been
representing a paying client who was billed by the hour in a comparable case.  See Perdue v. Kenny
A. ex rel. Winn, 130 S. Ct.  1662, 1672 (2010).  In Perdue, the Supreme Court found that a fee
(continued...)

-20-

MacAllister, 64 F.3d 1439, 1445 (10th Cir. 1995). The Tenth Circuit applies a hybrid approach which combines the percentage fee method with the specific factors traditionally used to calculate the lodestar. See Gottlieb v. Barry, 43 F.3d 474, 483 (10th Cir. 1994). In all cases, the Court must consider the factors articulated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). See Ramos v. Lamm, 713 F.2d 546, 552 (10th Cir. 1983), overruled on other grounds by Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 483 U.S. 711, 725 (1987). Those factors are as follows: (1) time and labor required; (2) novelty and difficulty of question presented by the case; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorneys due to acceptance of the case; (5) customary fee, (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or circumstances; (8) amount involved and results obtained; (9) experience, reputation and ability of the attorneys; (10) "undesirability" of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. See Gottlieb, 43 F.3d at 483.

### 1. Time And Labor Required

Plaintiff asserts that through the date on which the parties filed their first motion to approve the settlement, i.e. October 19, 2010, counsel spent a total of 173.63 hours on the case and

---

[21](...continued)
determined by the lodestar method may be enhanced only in rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee. See id. at 1673-75. The Supreme Court did not address whether a court may approve reasonable attorney's fees based on a percentage of the common fund. In any event, if the Court applies a common fund approach, the time and labor required are relevant to determining whether the fee is reasonable. See Gottlieb v. Barry, 43 F.3d 474, 483 (10th Cir. 1994).

paralegals spent a total of 76.24 hours on the case.[22]  Plaintiff asserts that the lodestar calculation

for this time is $56,274.10.  See Doc. #77 and Exhibit 1 thereto.  Specifically, for attorneys, plaintiff

asserts the following time and billing rates:

| Attorney | Total Hours | Hourly Rate | Total |
|---|---|---|---|
| Michael F. Brady | 2.25 | $350.00 | $    787.50 |
| Michael Hodgson | 132.85 | $300.00 | $39,855.00 |
| Matthew E. Osman | 27.89 | $200.00 | $ 5,578.00 |
| Heather M. Lake | 6.44 | $300.00 | $ 1,932.00 |
| Casey Connealy | 4.20 | $300.00 | $ 1,260.00 |
| | 173.63 | | $49,412.50 |

See Doc. #77 and Exhibit 1 thereto.

Plaintiff does not provide billing records or affidavits to support the time entries.  In his

original motion, plaintiff asserted that attorneys spent a total of 199.07 hours, for a total lodestar

calculation of $53,549.83.[23]  See Doc. #73 and Exhibits 2-4 thereto.  With that motion, plaintiff

---

[22]     Plaintiff does not seek attorney's fees for time spent since the filing of his first motion to approve the settlement.  Also, plaintiff does not seek reimbursement for time spent by co-counsel, Barry Grissom.  See Doc. #77 at 2 n.2.

[23]     In his original motion, plaintiff asserted the following time for attorneys:

| Attorney | Total Hours |
|---|---|
| Michael F. Brady | 2.25 |
| Michael Hodgson | 134.09 |
| Matthew E. Osman | 27.89 |
| Heather M. Lake | 6.44 |
| Casey Connealy | 6.20 |
| Mark A. Kistler | 22.20 |
| | 199.07 |

See Exhibit 2 to Doc. #73.  Plaintiff did not provide hourly rates for each attorney, but asserted an average hourly rate of $269.00 (199.07 x $269.00 = $53,549.83).  On May 9, 2011, the Court asked plaintiff to supplement his motion with affidavits to verify the hours spent on the case, as well as education, experience and billing rate of each attorney who billed time on the case.  See Doc. #76 at 2.  On May 20, 2011, plaintiff provided information regarding attorney hourly rates and
(continued...)

submitted time records of each attorney.  <u>See</u> Exhibit 3 to Doc. #73.  Plaintiff does not explain

which, if any, of those billing entries are included in his supplemental calculation.  Based on the

Court's review of the billing entries, it appears in the supplemental calculation, plaintiff may have

omitted billing entries which occurred after he filed the first motion to approve the settlement, <u>i.e.</u>

billing entries after October 19, 2010.[24]

For paralegals, plaintiff asserts the following time and billing rates:

| Paralegal | Total Hours | Hourly Rate | Total |
|-----------|-------------|-------------|-------|
| William L. Brady | 4.83 | $90.00 | $ 434.70 |
| Beth R. Cooper | 3.60 | $90.00 | $ 324.00 |
| Kathy Corcoran | 18.00 | $90.00 | $ 1,620.00 |
| Layne Aingell | 44.84 | $90.00 | $ 4,035.60 |
| Diana Brady | 4.97 | $90.00 | $ 447.30 |
| | 76.24 | | $ 6,861.00 |

<u>See</u> Doc. #77 and Exhibit 1 thereto.

Plaintiff does not provide billing records or affidavits to support the time entries.  In his

original motion, plaintiff asserted that paralegals spent a total of 94.70 hours, for a total lodestar

calculation of $8,523.00.[25]  <u>See</u> Doc. #73 and Exhibits 2-4 thereto.  With that motion, plaintiff

---

[23](...continued)
experience.  Doc. #77 at 2.  Plaintiff did not provide affidavits to verify the facts or hours spent on
the case.  <u>See</u> <u>id.</u>

[24]      For instance, for Michael Hodgson, the supplement lists 132.85 hours.  <u>See</u> Exhibit 1
to Doc. #77.  This is 1.24 hours less than the original motion, which lists 134.09 hours (134.09 -
132.85 = 1.24 hours).  <u>See</u> Exhibit 2 to Doc. #73.  The time entries which plaintiff submitted with
the original motion show that Hodgson billed 1.24 hours after October 19, 2010.  <u>See</u> Exhibit 3 to
Doc. #77.

[25]      In his original motion, plaintiff asserted the following time for  paralegals:

| Paralegal | Total Hours |
|-----------|-------------|
| William L. Brady | 12.83 |

(continued...)

submitted time records for each paralegal.  <u>See</u> Exhibit 4 to Doc. #73.  Plaintiff does not explain

which billing entries, if any, are included in his supplemental calculation.  Based on the Court's

review of the billing entries, it appears in the supplemental calculation, plaintiff may have omitted

billing entries which occurred after he filed the first motion to approve the settlement, <u>i.e.</u> billing

entries after October 19, 2010.[26]

Because plaintiff has not submitted time entries to support the supplemental information and

affidavits to verify time spent on the case, the Court's ability to determine a reasonable lodestar rate

is severely hindered.  The time entries which plaintiff submitted with his original motion reflect a

substantial amount of time spent on attorney conferences and intra-office communications with little

to no description as to what was discussed.  <u>See</u> Exhibit 3 to Doc. #73.  Without more detailed

information, the Court cannot determine whether counsel exercised proper billing judgment in

---

[25](...continued)

| | | |
|---|---|---|
| Beth R. Cooper | 3.60 | |
| Kathy Corcoran | 21.00 | |
| Layne Aingell | | 52.30 |
| Diana Brady | 4.97 | |
| | 94.70 | |

<u>See</u> Exhibit 2 to Doc. #73.  Plaintiff did not provide hourly rates for each paralegal, but asserted an average hourly rate of $90 (94.70 x $90.00 = $8,523.00).  On May 9, 2011, the Court asked plaintiff to supplement his motion with affidavits to verify the hours spent on the case, as well as education, experience and billing rate of each paralegal who billed time on the case.  <u>See</u> Doc. #76 at 2.  On May 20, 2011, plaintiff provided information regarding individual hourly rate for paralegals.  <u>See</u> Doc. #77 at 3.  Plaintiff did not provide information regarding paralegal experience or education. Also, plaintiff did not provide affidavits to support the hourly rates and hours spent on the case.  <u>See</u> Doc. #77.

[26]     For instance, for William L. Brady, the supplement lists 4.83 hours.  <u>See</u> Exhibit 1 to Doc. #77.  This is 8.00 hours less than the original motion, which lists 12.83 hours (12.83 - 4.83 = 8.00 hours).  <u>See</u> Exhibit 2 to Doc. #73.  The time entries which plaintiff submitted with the original motion show that Brady billed 8.00 hours after October 19, 2010.  <u>See</u> Exhibit 4 to Doc. #77.

charging for the time.  After thoroughly reviewing the billing statements, the Court disregards 27.41 hours for Hodgson, 2.97 hours for Osman, 4.02 hours for Lake and 1.80 hours for Connealy.  This leaves a total of 137.43 attorney hours, comprised as follows: 2.25 hours for Brady; 105.44 hours for Hodgson; 24.92 hours for Osman; 2.42 hours for Lake; and 2.40 hours for Connely.[27]

On this record, plaintiff has not shown that the requested hourly rates are reasonable or customary.[28]  In a recent case, Wilhelm v. TLC Lawn Care, No. 07-2465-KHV, 2009 WL 57133 (D. Kan. Jan. 8, 2009), the Court determined reasonable hourly rates for Brady, Hodgson, Osman and Lake as follows:  $187.00 for Brady, $168.58 for Hodgson, $125.00 for Osman and $168.58 for Lake.  See id. at *5.  The Court adopts those rates for this case.  Wilhelm did not involve work by Connealy.  The record contains no information regarding Connealy's experience level or customary billable rate.  In absence of such information, the Court will allow a reasonably hourly rate of $125.00 for Connealy.  Based on these adjustments, the Court makes the following lodestar calculation:

---

[27]     Brady's hours remain unchanged.  For Hodgson: 132.85 hours - 27.41 hours = 105.44 hours.  For Osman: 27.87 hours - 2.97 hours = 24.92 hours.  For Lake: 6.44 hours - 4.02 hours = 2.42 hours.  For Connealy: 4.20 hours - 1.80 hours = 2.40 hours.

[28]     With his supplemental information, plaintiff submits an affidavit by Teresa A. Woody which was signed over a year ago, on May 25, 2010.  See Exhibit 3 to Doc. #77.  The affidavit does not mention the name of this case.  See id.  Woody states that the prevailing local market rates for attorneys practicing in this area of litigation ranges from $200 per hour to $400 per hour.  See id. ¶ 4.  Woody states that she is familiar with the experience levels and skills of Brady, Hodgson and Lake, and that hourly rates of $350 for Brady and $300 for Hodgson and Lake are reasonable.  See id. ¶¶ 6-7.  Woody does not mention Osman or Connealy.  Woody states that attorneys took at least 15 depositions in the case, see id. ¶ 8, but the billing statements do not reflect any depositions.  See Exhibit 3 to Doc. #73.

| Attorney | Total Hours | Hourly Rate | Total |
|---|---|---|---|
| Michael F. Brady | 2.25 | $187.00 | $    420.75 |
| Michael Hodgson | 105.44 | $168.58 | $17,775.08 |
| Matthew E. Osman | 24.92 | $125.00 | $ 3,115.00 |
| Heather M. Lake | 2.42 | $168.58 | $    407.96 |
| Casey Connealy | 2.40 | $125.00 | $    300.00 |
|  | 137.43 |  | $22,018.79 |

For paralegals, the Court determines a reasonable hourly fee of $45.00. With this adjustment, the Court makes the following lodestar calculation:

| Paralegal | Total Hours | Hourly Rate | Total |
|---|---|---|---|
| William L. Brady | 4.83 | $45.00 | $    217.35 |
| Beth R. Cooper | 3.60 | $45.00 | $    162.00 |
| Kathy Corcoran | 18.00 | $45.00 | $    810.00 |
| Layne Aingell | 44.84 | $45.00 | $  2,017.80 |
| Diana Brady | 4.97 | $45.00 | $    223.65 |
|  | 75.97 |  | $  3,430.80 |

Under the lodestar method, a reasonable attorney's fee is $25,449.59.[29] This amount is close to the $25,930.20 in attorney's fees – or 30.5 per cent of the total settlement fund – which plaintiff requests under the settlement agreement. Thus, the fee request appears reasonable based on time and labor required for the case.

## 2.    Novelty And Difficulty Of Questions Presented

Plaintiff asserts that the case presents two difficult issues: (1) whether members of the class were employees or independent contractors; and (2) whether class members were "outside sales" employees and therefore exempt from overtime rights under the FLSA. See Doc. #73 at 4-5. These issues may show that the case is fact intensive, but they do not present difficult issues of fact or law. Where the legal and factual questions in a case are not novel or overly difficult but are considered somewhat complicated, this factor does not favor a particularly high or low fee. See

---

[29]    $22,018.79 in attorney's fees + $3,430.80 in paralegal fees = $25,449.59.

Norwood v. Charlotte Mem. Hosp. & Med. Ctr., 720 F. Supp. 543, 550 (W.D.N.C. 1989); see also Matter of Moore, 36 B.R. 323, 329 (Bkrtcy. M.D. Ga. 1984) (complex but not unique or novel issue of law did not warrant upward adjustment in fee award).

### 3.      Skill Requisite To Perform The Legal Service Properly

Plaintiff's counsel frequently prosecutes matters like this one.  The format and content of the briefs in this case are similar to those which counsel has submitted in prior similar cases, and the record does not suggest that this case required extraordinary skill to properly prosecute.

### 4.      Preclusion Of Other Employment Due To Acceptance Of Case

Counsel assert that they assumed unusual and substantial risk because the case involved class members working from remote locations.  See Doc. #73 at 5.  The inherent risk of prosecuting the case does not show that counsel was precluded from conducting other business while it prosecuted the case.  See, e.g., Bruner, 2009 WL 2058762, at *7.

### 5.      Customary Fee

While the Tenth Circuit applies a hybrid approach in determining the reasonableness of fees in common fund cases, the customary fee award is typically derived from a percentage of the fund.  See Rosenbaum, 64 F.3d at 1445; Gottlieb, 43 F.3d at 482.  This Court has also typically applied the percentage of the fund method when awarding fees in common fund, FLSA collective actions.  The record contains little to no evidence regarding counsel's customary fee arrangements. This Court has found that fee awards in these types of cases have ranged from four per cent to 58 per cent of the common fund and resulted in total fee awards ranging from a few thousand dollars to over $5 million.  See Bruner, 2009 WL 2058762, at *7.

### 6.      Whether Fee Is Fixed Or Continent

Counsel assert that they took the case on a contingency basis and assumed "relatively high risk" that they would not be paid or that they would receive far less compensation than under a lodestar calculation.  Doc. #73 at 5.

### 7.      Time Limitations

Plaintiffs' counsel offer no evidence that plaintiffs imposed any time limitations on counsel during the litigation process.  Nor does the record suggest that other circumstances imposed time limitations on plaintiffs' counsel during any stage of the litigation process.  Counsel was not pressured by the time constraints of preparing for trial or responding to extensive contested motion practice.

### 8.      Amount Involved And Results Obtained

In achieving a settlement fund of $85,000, plaintiffs' counsel obtained a favorable result for opt-in plaintiffs and avoided the uncertainty and rigors of trial.  It appears that the amount of settlement is favorable in light of damages incurred for lack of overtime and minimum wages paid, and in light of factual and legal questions regarding plaintiff's right to recover under the FLSA.

### 9.      Experience, Reputation And Ability Of Attorneys

Plaintiff asserts that Michael Brady is highly skilled in FLSA litigation.  See Doc. #73 at 6.  Brady billed 2.25 hours in the case.  Plaintiff provides little or no information regarding the experience, reputation and ability of the attorneys who performed substantially all of the work in the case.  To date, the Court has been unimpressed with counsel's ability to structure the settlement in a way to obtain court approval thereof.

### 10.    Undesirability Of The Case

Nothing in the record indicates that this case was in any way undesirable for counsel.

### 11.    Nature And Length Of Professional Relationship With Client

Plaintiffs' counsel presents no evidence of any pre-existing attorney/client relationship with the plaintiffs.  The meaning of this factor, however, and its effect on the calculation of a reasonable fee has always been unclear.  See Lucas v. Kmart Corp., No. 99-cv-01923-JLK-CBS, 2006 WL 2729260, at *7 (D. Colo. July 27, 2006) (citing Ruiz v. Estelle, 553 F.Supp. 567, 594 (S.D. Tex. 1982)).  Courts applying the Johnson factors typically state that this particular standard is irrelevant or immaterial.  See Ruiz, 553 F.Supp. at 594.

### 12.    Awards In Similar Cases

Plaintiff presents no evidence regarding awards in similar cases.  In Bruner, this Court found that awards in similar cases ranged from 28 to 33 per cent of the settlement fund.  See Bruner, 2009 WL 2058762, at *9.

After considering the Johnson factors, the Court finds that the requested attorney's fees are reasonable.  Specifically, the Court finds that it is reasonable to reimburse counsel for $2,119.80 in costs and 30.5 per cent of the settlement fund.  As noted, the settlement requires class members to opt in to the settlement and execute a waiver before obtaining settlement funds.  If any class member chooses to not participate in the settlement, his or her settlement allocation will revert back to defendant.  See Doc. #78 at 5.  Because of this contingency, the Court finds that it is premature to award attorney's fees at this time.  After class members have opted in the settlement and received their settlement distribution, plaintiff may file a motion for attorney's fees and provide evidence of the amount of funds actually distributed to class members.  The Court will then determine a

reasonable attorney's fee based on a percentage of settlement funds actually distributed to class members.[30]

###    E.    Conclusion

The Court certifies a final collective action as to loan originators.  Subject to the Court's modification of the settlement allocation between class members, the Court finds that the proposed settlement resolves a bona fide dispute and is fair and equitable to all parties concerned.  The Court approves an incentive fee of $840.00 to Peterson.

To class members who opt in the settlement, the parties shall distribute the settlement fund as follows:

| Name | Pro Rata Share | Settlement Allocation |
|---|---|---|
| Anderson, Gary | .083 | $    4,657.13 |
| Dooley, Janet | .073 | $    4,096.03 |
| Peterson, Norman | .428 | $  24,015.08 |
| Sjrema, Robert | .203 | $  11,390.33 |
| Watson, Elizabeth | .137 | $    7,687.07 |
| Zich, Lea | .076 | $    4,264.36 |
| TOTAL | 1.00 | $  56,110.00 |

Plaintiff's counsel may recover costs of $2,119.80 and reasonable attorney's fees based on 30.5 per cent of the total amount of the settlement fund ($85,000) minus the portion, if any, of the settlement fund which reverts back to defendant because class members opt out of the settlement.  After all class members have had an opportunity to opt in the settlement, plaintiff may file a motion for attorney's fees which demonstrates the amount of money actually distributed to class members.

---

[30]    Plaintiff has represented that all class members intend to opt in the settlement.  See Doc. #78 at 6.  If that in fact occurs, plaintiff will receive the full amount of requested attorney's fees.  If some class members choose not to participate in the settlement, their portion of the settlement allocation will revert back to defendant.  In that event, the Court will reduce attorney's fees based on the total settlement fund distributed to class members.  Any reduction in attorney's fees will be distributed to class members on a pro rata basis as outlined above.  See Doc. #77 at 8.

**IT IS THEREFORE ORDERED** that the parties' <u>Renewed Amended Joint Motion For Approval Of FLSA Collective Action Settlement And Dismissal With Prejudice</u> (Doc. #80) filed June 24, 2011 be and hereby is **SUSTAINED in part.** The Court certifies a final collective action under the FLSA as to loan originators. The claims of Linda Modrack (loan processor) are hereby dismissed without prejudice.

As to the class of loan originators, the Court approves the proposed settlement with the following modification. The Court approves an incentive fee to Peterson in the amount of $840.00. The parties shall distribute the settlement proceeds as follows: $4,657.13 to Gary Anderson; $4,096.03 to Janet Dooley; $24,015.08 to Norman Peterson; $11,390.33 to Robert Sjrema; $7,687.07 to Elizabeth Watson; and $4,264.36 to Lea Zich.

On or before **September 30, 2011,** the parties shall inform the Court whether any class members decline to participate in the settlement. As to any class members who decline to participate, their share of the settlement allocation shall revert back to defendant. Their claims are set for trial on **October 3, 2011**.

**IT IS FURTHER ORDERED** that plaintiff's <u>Unopposed Motion And Memorandum For Approval Of Attorneys' Fees & Costs</u> (Doc. #73) filed February 10, 2011 be and hereby is **SUSTAINED in part.** The Court approves costs of $2,119.80 and reasonable attorney's fees based on 30.5 per cent of the total amount of the settlement fund minus the portion, if any, which reverts back to defendant because of class members who opt out of the settlement. After all class members have had an opportunity to opt in the settlement, plaintiff may file a motion for attorney's fees which

-31-

demonstrates the amount of money actually distributed to class members.

Dated this 24th day of August, 2011 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge